IVY v. THE EAST TENN., VA. & GA. RAILWAY CO.

The testimony of the plaintiff himself being confused and contradictory, it is not apparent to this court that there was any error in granting a nonsuit. Considered all together, the testimony, construed fairly and naturally, shows that notwithstanding the train by which the plaintiff was injured was running too fast and that the bell was not rung in approaching the crossing, the injury did not take place at the crossing but some distance beyond it, and did not result directly from the company's negligence but from the sudden and unnecessary conduct of the plaintiff himself in stepping upon the track immediately in front of the train and so near to the locomotive that it was impossible to avoid striking him after he thus put himself in a position of danger.

November 23, 1891. By two Justices.          Judgment affirmed.

Railroads. Negligence. Nonsuit. Before Judge Van Epps City court of Atlanta. December term, 1890.

Ivy sued the railway company for damages from personal injuries. After the introduction of the testimony for the plaintiff, nonsuit was granted, and the plaintiff excepted.

The plaintiff testified : He went, at night between 9 and 10 o'clock, to where Victoria street in the city of Atlanta crosses a number of railroad tracks, approaching the crossing from the north side. He did not see any train at all while coming across the track, except a switch-engine which was on the south side making switches. He looked both ways. He stood there about twenty minutes waiting for the train, which was across the main crossing and a very long train, to pull up. It did not seem to get across the crossing. It made two or three switches as it pulled on up towards the freight-depot. He went on, starting towards the switchman, coming from near the end of the train west of the crossing. The switchman holloed, "Look out," and there was at that time a train coming in front of witness, the switch-engine being right by the side of him, and he watching the train in front. The switchman holloed again and the third time, and by that time witness looked back and saw a train was very nearly on him, and jumped, and before his feet could hit the ground the train threw him. This was on the main line, the Georgia Pacific track, which was used both by that road and by defendant. It was about fifty or sixty feet from the crossing. Witness does not know what engine hit him. He did not hear anything but the noise of the train, and heard that all the time because the other train was pulling up towards the depot, and the train that was going that way he did not pay any attention to, because he knew it had passed him. The train that

struck him was not ringing the bell, and he does not
know how fast it was running. There was no bell ring-
ing at all. He could not detect the train was on him
until he jumped, and when he jumped it was so close to
him it hit him before he knew anything. The switch-
man said, "Look out," that train was coming there, or
some way; witness did not exactly understand him, but
knows he threw up his lantern and told witness to "look
out." Witness was watching the train coming in front
of him, but does not know what train that was. He
crossed the railroad because he could not get across
"there," and because they were making up their freight
there, and they retained the track so long he had either
to go back the other way or go where the switchman
was. At the place where he attempted to cross people
crossed very often, and they crossed there because the
crossing was blocked with trains. He supposes that he
was on the identical track where the engine hit him,
about a minute and a half. He saw the train was on it
when he stepped on the track. Supposes he was on
there more than two minutes, and as soon as he stepped
on the track he glanced his eye and saw the train com-
ing, and about that minute, before he hit the ground,
the train hit him. He understood the switchman to be
alluding to the train that was coming in front of him
when the switchman was calling to him. There are five
or six tracks at this place, and of these the W. & A.
railroad had two. The cars that were blockading the
street were on the track that ran by the freight-depot,
which was the track of the Georgia Pacific and not of
defendant. The Georgia Pacific depot is at the crossing
on the south side of these tracks, but the East Tennessee
depot is about a mile away. There was no train on the
tracks next to Marietta street, the side from which he
approached, and the blockading train was on the far
side of the five tracks. He stopped next to the track

that this train was on, right between two tracks, having crossed over four tracks, and was waiting to get over that last track; and the train not moving after he had waited awhile, he walked down the track in order to get to the end of the train and go around it. He did not get up on the track, but went between the last two tracks. He did not go to where he wanted to cross, because the train had stopped and there was a train coming on the same track, which threw him between the two trains. The switchman holloed, "Look out," and witness could not go that way, but had to come back, so he turned to his right to get on the other side, stepped back and crossed the other track to between the second and third tracks. When the switchman still holloed, "Look out," he turned himself "that way" and found the train was on him. It was while he was walking to get around the blockading train that the cry, "Look out" was given, and he did not get to the end of the blockading train, which train was facing towards the city. The two tracks were about three feet apart, the regular distance. People can walk between them, and when trains are on them a man could stand, but he did not know that it would be safe to walk, unless one walked "mighty straight"; if he stood still the train might pass him without his being hit. The switchman was at the switch below him, west of the crossing, the city side being east of the crossing. At the time the switchman spoke to him he was walking between the tracks, and the train he saw moving then was coming right towards him on the track on his right from towards the river, the west side. The blockading train was "puffing about kind of shifting"; he does not know what it was doing; it was not coming fast, and the engine or train that was coming towards him was not coming very fast; the headlight was shining in his face. When he heard the switchman hollo, "Look out," he thought he

meant the engine was coming towards him, and did not
look back to see whether there was one on the other
side coming.    After the switchman holloed and witness
turned to his right and stepped across the track, this
put him between the third and fourth tracks, and just
as he stepped there he looked back and saw the train
was right on him and that he could not risk himself
there between those two tracks where he first caught
sight of this train.    He got upon the third track; tried
to jump over it; he did not get on it "he don't reckon";
he does not know how he did, but knows he jumped.
When the warning to "look out" was given, he was be-
tween the third and fourth tracks, having crossed over
one track, and the third track was the main line.    Does
not know how he got on that track.    He jumped right
there.    Just as he crossed the track on the right and
got in between the others, he looked back and saw this
train was right on him; supposes he must have been
on the track when he saw the train was on him.    He
could not tell the position he was in right then, because
he got a little "sorter" excited and knew it was danger-
ous and made a jump.    He "aimed" to jump clean out
of the way.    When he got the first notice to look out,
he was between the fourth and fifth tracks and saw an
engine coming down the fourth, and he crossed over
the fourth, and then the switchman holloed again to
"look out," and he looked in the rear.    He got another
notice after he was between the third and fourth tracks,
and he looked out about the third time the switchman
holloed.    He never looked for the engine coming from
towards the city, but looked right in front of him, tak-
ing it for granted that was the train the switchman was
talking about; never looked back the other way until
after he got on that track.    He was crossing back to-
wards Marietta street when he got hit.    That was the
only way to get out of danger.    He was quite familiar

with that place and had been crossing there about five years twice a day. Had a bottle of whiskey in his pocket at the time he was hurt, but had not drunk a drop of it; had taken two glasses of beer that night, the last about twenty or twenty-five minutes before he left Marietta street. He heard the switchman when he first called out, and as they have a usual way of holloing at each other on the switch, he had no idea the switchman was talking to him, but left the place where he was because the switchman kept holloing and throwing the lantern, and that attracted his attention. The main line where he got hurt is straight and perfectly open. He could have heard a bell if they were ringing it, but there was no bell rung. If he had been paying attention and listening to see whether trains were coming or not, he could have heard the noise of the train that hit him, in spite of what was going on around him. He was not paying any attention in the direction in which the train was coming that struck him, but all his attention was on the train that was coming [from the west]. The train that hit him had a headlight on it, and if he had been looking that way he could have seen it approaching for several hundred yards.

The switchman testified for plaintiff: It was the pilot of one of defendant's engines which struck plaintiff. Witness saw the plaintiff about three minutes before, and plaintiff was going between the number one side-track and the main line, walking on the end of the ties, right by the side of the track. Witness's train (Georgia Pacific) was in motion at the same time coming back on number one side-track. Both of the trains were in motion. Plaintiff " aimed" to go around by witness and witness holloed to him to " look out." If he had come around where witness was, witness's train would have caught him. There was a W. & A. switch-engine right across the track, blowing off steam, and

defendant's passenger-train coming, and witness supposes plaintiff did not know which one holloed at him. The train which struck him was running fast enough for a man to get off and on, witness supposes about ten miles an hour. It was about three car-lengths from the street crossing, and when the train was coming towards the crossing witness did not hear it ringing a bell. Does not know whether the W. & A. train was ringing a bell; if it was he did not hear it; could not have heard it if it hadb een, because of the noise of witness's own train that he was working with. Plaintiff touched the track and started across, and before he got across the engine struck him. It was about three seconds or a minute—something like that. If a man were crossing at Victoria street, he would have to cross three of the Georgia Pacific tracks, counting the main line, and three of the W. &. A. The W. &. A. engine was coming from the river towards the city and was on the track next to the main line. Plaintiff was coming down the main line on the side of. the track and next to the track witness's train was on, and was about three car-lengths from witness when witness holloed at him, looking right at the engine; the reflection of the light of the W. & A. shone right in his face. Witness saw the engine coming behind him; could have seen the engine three or four hundred yards. The main line was between the track witness's engine was on and the track the W. & A. engine was coming on, and when witness holloed at plaintiff he did not cross the track the W. &. A. engine was on, but started across the main line, and before he got across was struck; if he had looked back he could have seen the train coming. He was watching witness. The W. &. A. engine was ringing a bell; it was letting off steam, and witness' engine was backing and making a noise and the steam was escaping from it; does not remember whether it was ringing a bell or not. Because

of the noise the W. & A. was making, witness could not tell whether the train that was coming out was making a noise or not. Thinks it was running about ten or twelve miles an hour. Saw nothing of any whiskey when he picked up plaintiff; saw the bottle where it was broken and smelt some whiskey when he picked him up, but paid no attention to his breath, and does not know whether he had drunk any or not. He did not see plaintiff when plaintiff was standing at the crossing, there were so many standing there. The tracks were about six feet, he supposes, from one rail to the other, which is the regular distance. When he first saw plaintiff plaintiff was walking straight.

Plaintiff also put in evidence as to the extent of his injuries, earnings, age, etc., and an ordinance of the city to the effect that any engineer or other person in charge of an engine, with or without cars attached, who should run the same through any part of the city at a greater rate of speed than six miles an hour, should, on conviction, be punished in a manner prescribed in the ordinance.

Cox & REED, for plaintiff.

DORSEY, BREWSTER & HOWELL, for defendant.