HOWELL, administratrix, *v.* PENNINGTON, guardian.

1. A general complaint in a bill of exceptions that a trial judge erred in directing a verdict for the plaintiff is to be understood as meaning the judge committed error in holding that the evidence, viewed in the light of the pleadings, demanded a finding against the defendant; and such complaint, thus interpreted, constitutes a sufficiently specific assignment of error, if the transcript of the record discloses upon what issues the case was tried.
2. Even upon the assumption that it is lawful in this State to exact the payment of eight per cent. interest in advance, by way of "discount," on a loan for a term of one year, the transaction disclosed by the evidence in the present case was clearly violative of the statutes against usury.

Argued June 4, — Decided August 13, 1903.

Complaint. Before Judge Hart. Putnam superior court. March 17, 1902.

*Turner & Preston,* for plaintiff in error, cited, as to usury: Civil Code, §§ 2876, 2877, 2879, 2886, 2892. Interest on interest not allowed, unless plainly contracted for: 72 *Ga.* 864 (3). No device effectual to cover usury: 78 *Ga.* 251, 635 (2). Titles tainted with usury, void: *Ga. Reports,* 54/554, 55/414, 691; 56/33; 77/369; 98/145. Such deeds can not be treated as equitable mortgages: *Ga. Rep.* 64/71 (2); 66/584 (5); 75/159, 163; 80/423; 98/139 (1). Usury in consideration of deed may be proved by parol: *Ga. Rep.* 59/584; 65/561.

*W. F. Jenkins & Son,* contra: It is legal to contract for interest in advance: 37 *Ga.* 384 (1); 27 Am. & Eng. Enc. L. (1st ed.), 989, 990; 29 L. R. A. 761. It is legal to contract for interest on short loans by way of discount: *Ga. Rep.* 90/591 (5); 107/540; 107/614, 615; 29 L. R. A. 761; 27 Am. & Eng. Enc. L. (1st ed.) 989, 990. Not usurious to charge interest on interest when due by contract: *Ga. Rep.* 6/253; 37/384 (3); 62/271 (2); 79/233; 98/29. Usury in the interest note would not affect the principal note: 98 *Ga.* 28.

FISH, P. J. Suit was instituted by L. M. Pennington, guardian, against Thomas J. Gaither, upon a promissory note for $500, signed by the latter and dated February 10, 1896, due twelve months after date, "with interest from maturity at the rate of eight per cent. per annum." A number of credits were entered on the note, and the amount claimed to be still due thereon was $425.00 principal, besides accrued interest. The plaintiff in his petition alleged, that, to secure the payment of this note, Gaither had given him a security deed, covering certain described realty; and he accordingly prayed that he be given a special judgment lien on this property for the balance claimed to be due on the note. The defendant filed an answer in which he set up the defense of usury, basing the same upon the following allegations of fact: "On February 10th, 1896, defendant borrowed from plaintiff the sum of $500.00, and executed to him his promissory note of that date, due 12 months after the date thereof, at the specified rate of interest named therein of 8 per cent. per annum from maturity. At the same time plaintiff required defendant to execute to him his promissory note of date February 10th, 1896, for the sum of $43.48, due 12 months after the date thereof, which was for the interest on said loan of $500.00 for 12 months." The defendant also set forth a calcula-

tion as to the amount really due the plaintiff, and prayed that his claim be purged of all usury, and that the security deed be declared null and void as being tainted with usury. On the trial of the case the defendant swore to the truth of the above-recited facts set forth in his plea of usury.. Indeed, there was no conflict in the evidence as to this issue, the plaintiff, who was the only other witness introduced, testifying that the note for $43.48, the payment of which was secured by a deposit with him of certain stock certificates belonging to Gaither, was given on the same day the loan to him of $500.00 was made; that he (Pennington) "required Gaither to pay the first year's interest in advance, but, Gaither having no money, [he] loaned Gaither the amount of the first year's interest, to wit, $40.00, with which to pay said interest; . . that the aforesaid note for $43.48 . . was for the said $40.00 interest and $3.48 interest (discount) on said interest ($40.00) paid in advance; but that he [Pennington] did not actually deliver or pay over to the said Gaither any other sum or amount of money than the $500.00 loaned as above stated." Upon the close of the evidence the trial judge directed the jury to return a verdict in favor of the plaintiff for the full amount claimed by him, for which amount he should be entitled to assert a special lien on the property described in the security deed executed by Gaither. A judgment in accordance with this verdict was then entered. Thereupon Gaither sued out a bill of exceptions, in which he set forth the following assignment of error: "To which said order of the" presiding judge "directing said verdict, as well as to the verdict of the said jury and the judgment of the said court, plaintiff in error then and there excepted and now excepts and assigns the same as error." Before the case came on for argument in this court, Gaither died. Upon the appointment of Fannie J. Howell as his administratrix, she was in that capacity made a party plaintiff in error in his stead A motion to dismiss the writ of error was presented in behalf of Pennington, guardian, on the ground that the bill of exceptions contained "no sufficient assignment of error." We reserved our decision on this motion and heard argument on the merits of the case.

1. It has heretofore been definitely settled by a number of adjudications by this court that a general complaint in a bill of exceptions that a trial judge erred in directing a verdict for the plaintiff is to be understood as meaning the judge committed error in hold-

ing that the evidence, viewed in the light of the issues raised by the pleadings, demanded a finding against the defendant; and, thus interpreted, such complaint constitutes a sufficiently specific assignment of error. See *Phillips* v. *Ry. Co.*, 112 *Ga.* 197; *Dickson* v. *Burwell*, 113 *Ga.* 99; *Waller* v. *Hogan*, 114 *Ga.* 384; *Anderson* v. *Walker*, 114 *Ga.* 505. Of course, as was held in *Turner* v. *Alexander*, 112 *Ga.* 820, if a case be heard on pleadings which do not disclose upon what issues it was tried and disposed of, a bare complaint that the court erred in directing a verdict for one of the parties litigant will not suffice. But, as will have been seen from the foregoing statement of the pleadings and evidence in the present case, it clearly does not fall within the ruling announced in the case last cited. We therefore overrule the motion to dismiss the writ of error.

2. It was contended by counsel for the defendant in error that the direction of a verdict in his favor was right, since the evidence showed there was no usury in the transaction, but that he had simply exercised his legal right to contract for payment in advance of eight per cent. interest on the loan of five hundred dollars. In support of this contention the following cases were cited and relied on: *Scott* v. *Saffold*, 37 *Ga.* 384; *Mackenzie* v. *Flannery*, 90 *Ga.* 591; *Green* v. *Equitable Mortgage Co.*, 107 *Ga.* 540; *Union Savings Bank* v. *Dottenheim*, Id. 614. In the first of these cases it appeared that the maker of a note, after it fell due, gave to the payee a " new note for the amount of interest on the " original note, as a payment of interest " in advance for one year, at 10 per cent.;" and, ten months thereafter, paid this new interest note in consideration of an agreement on the part of the payee not to enforce the payment of the original note until the maker should return from a contemplated trip to Europe. This arrangement was made without the consent or knowledge of an accommodation indorser, who claimed that he was thereby relieved from liability on the original note; and this court held that the giving of the new "note for legal and usurious interest in advance, and the payment thereof, under the circumstances, was a binding contract on the part of the holder to give time to the maker, and therefore discharged the endorser." It certainly was not ruled that the reservation of unearned interest on a loan did not constitute usury.

Nor was any question touching the legal right of a lender to contract for the payment of interest in advance at the maximum rate fixed by statute properly presented for decision in the case cited from 90 *Ga.* The plaintiffs in that case sought "to foreclose a landlord's special lien against J. H. Mackenzie, for supplies furnished" to him. He "interposed a counter-affidavit upon the ground that the plaintiffs had no lien against him as landlords." In aid of this defense he filed an equitable plea in which he alleged that "the deeds under which the plaintiffs claimed to be landlords grew out of" certain transactions had with a firm of which he was a member; and he contended, (1) that these deeds were not absolute and unconditional conveyances of title, the same having been given "only to secure the debts of the firm;" and (2) that as these debts were infected with usury, the deeds given to secure their payment were void. The case was referred to an auditor, who returned a finding in favor of the plaintiffs, and Mackenzie filed numerous exceptions to the auditor's report, all of which were overruled by the trial judge. Mackenzie brought the case to this court for review, but the evidence taken before the auditor and by reference made a part of his report was not sent up in the record. Our present Chief Justice, who delivered the opinion in that case, called attention to this omission, and said this court could not, in consequence, " determine that the court below erred in overruling exceptions of fact to the auditor's report, nor in overruling exceptions to findings of law the correctness of which [depended] upon the existence of particular facts which might have been established by the evidence." (See page 599.) He further said, in this connection: "It is incumbent upon the party complaining to show error. We must assume, therefore, in the absence of any clear showing to the contrary, that the findings of the auditor, as approved by the court below, were correct. Without the evidence upon which the report was based, we can not determine that the auditor erred in finding that the deeds attacked by the defendant were what they appeared on their face to be — absolute conveyances and not merely security for a debt. Nor can we determine, without reference to the evidence, whether the taking of eight per cent. interest in advance by way of discount was usurious. Eight per cent. was legal if agreed upon in writing (Code, § 2050); and it is well settled that the taking of interest in advance on short loans in the usual and

ordinary course of business is not usurious, if the interest reserved does not exceed the legal rate." In support of this statement as to the legal effect of contracting for the payment of interest in advance, Tyler on Usury, 155–6, was cited, as showing the view taken of the matter in other jurisdictions. It will readily be observed, however, that the recognition thus given to the correctness of decisions rendered on the subject in sister States amounted to nothing more than obiter; for what was said as to the inability of the court to undertake to pass upon the merits of the exceptions taken to the report of the auditor, in the absence of the evidence introduced before him, effectually disposed of this branch of the case, and did not leave the court at liberty to make any binding adjudication as to what would be the law governing the case if the fact appeared, as it did not, that interest at the rate of eight per cent. per annum had been paid in advance. Indeed, there was no occasion for passing at all on the legal effect of the deeds attacked by Mackenzie, considered as instruments executed with a view to securing the payment of a debt, since it could not be assumed, arbitrarily and without any evidence before this court, that he had on the hearing before the auditor established by proof his contention that these instruments were not, as they appeared to be, absolute and unconditional conveyances of title to the plaintiffs. The 5th headnote, read by itself, is misleading. Taken in connection with the opinion filed in the case and the facts upon which this court based its judgment of affirmance, it must be perceived that the proposition laid down in that headnote is not to be regarded as the settled law of this State, or as anything more than an intimation of opinion as to a point not involved and only incidentally discussed.

A mere glance at the report of the case of *Green* v. *Equitable Mortgage Co.*, supra, will suffice to show that no mention whatever was made of the point now under discussion. In the *Dottenheim* case (107 *Ga.* 614), also relied on by counsel for the defendant in error, Mr. Justice Cobb casually remarked, as the result of his investigation of the law as established by the current of authority in this country, that: "It is also well settled that a contract providing for the payment of the highest lawful rate of interest in advance is not usurious; though many of the courts which recognize this as an established rule express doubts as to whether upon principle

such practice should be allowed to prevail." Quite a number of adjudications on this line were cited in support of this statement. But, as was pointed out by Little, J., who prepared the opinion filed in a later case, that of *McCall* v. *Herring*, 116. *Ga.* 235, this court did not in the *Dottenheim* case undertake to make any express ruling to the effect that the reservation of interest in advance, at the highest rate recognized as lawful, did not militate with the statutory laws of this State on the subject of usury. Mr. Justice Little further said, in commenting on the contention of counsel that there was no rational distinction between the exaction of a so-called "discount" on a short loan and the payment in advance of unearned interest on a long loan: "We are unable to see any reason why, on principle, the reservation of the highest rate of interest in advance on short-term loans does not render the contract usurious." He also called attention to the difficulty of reaching any save a purely arbitrary conclusion as to "where the line is to be drawn so as to determine what is a short and what a long-term loan," and announced the conclusion of the court that the transaction then under investigation was usurious, as it involved a loan for a period of five years, and could not properly be regarded as coming within the rule governing what were termed short-term loans. He added: "While we accept the doctrine almost universally applied to short loans, in the absence of controlling authority, we decline to extend that rule in the case of long loans." This remark, while significant, considered as an expression of the views entertained by the members of this court as at that time constituted, is not to be regarded as the equivalent of an express ruling on the subject. In point of fact, in neither that case nor in any of those we have discussed has this court finally and definitely committed itself by applying the above-mentioned exception to the general rule that the reservation in advance of unearned interest at the highest legitimate rate constitutes the most flagrant violation of the statutes against usury. Take, for example, a loan for a period of twelve and one half years of the sum of $10,000 at the rate of 8 per cent. per annum. Should the lender insist on immediately reserving an amount equal to the aggregate interest that sum would earn during the period stated, the farcical result would be: (1) the borrower would give his obligation to pay $10,000 at the end of twelve and one half years; (2) he would receive not one cent from

the lender, since the latter would reserve out of the principal amount ostensibly loaned the sum of $10,000 as interest; and (3) the borrower, if he met his promise to repay this phantom loan, would, at the end of twelve years and six months, make to his so-called lender a present of precisely ten thousand dollars. Whether or not the courts are at liberty to shut their eyes to similar results, differing only in degree, when payment of interest is made in advance, at the maximum legal rate, by way of "discount," on an admittedly short or quasi-short loan, is a question of much interest and practical importance. But it is not one which we are called upon to decide in the case now before us, and accordingly we leave it an open one, as it has remained, so far as this court is concerned, up to the present time.

It would seem, from the testimony of Pennington, that it was his original intention to require Gaither to pay in advance $40.00 as interest, at the rate of 8 per cent. per annum, on a loan to him of $500.00 for a period of one year. Had this intention been carried into effect, it would be pertinent to inquire, firstly, whether or not, as matter of law, a loan for a period of a year is to be regarded as one for a "short" term; secondly, if not so as matter of judicial cognizance, whether there was, or was not, evidence demanding a finding that the loan was made in the usual and ordinary course of business, under an established custom of "discounting" loans for a period of one year; and, lastly, whether or not the existence of such a custom can, in view of our statutes against usury, properly be held to justify such a transaction. As matter of fact, however, Pennington did not insist on "discounting" the loan made to Gaither, but paid over to him the full amount of $500.00 and required him to give an additional note for $43.48, as representing the interest to be paid for the use during one year of the $500.00 actually parted with. In other words, the borrower contracted to pay precisely $3.48 more than it was lawful for the lender to charge, as interest for one year, on the amount advanced.

In support of the contention that there was no usury exacted by Pennington, so far as the note for $500.00 was concerned, his counsel present the following ingenious argument: It was his right to reserve in advance, as interest for one year on the $500.00 loaned, $40.00. This he in effect did; and then, as it was also his right to do, since the sum reserved belonged to him, he loaned

this sum to Gaither, charging him as interest thereon for one year $3.48. While the latter amount was in excess of that he could lawfully charge at the maximum legal rate, to wit $3.20, yet this would not render the note for $500.00 usurious, but only affect the note for $43.48. That is to say, there were two distinct transactions: one a loan of $500.00, the interest upon which was reserved; and the other a loan of $40.00, for which Gaither gave his note, payable one year after date, for $43.48. We can not accept this reasoning as sound. There unquestionably was, in point of fact, but one transaction, a single loan evidenced by two writings, i. e., a promissory note covering the principal, providing for the payment of interest after maturity only; and an interest note, showing the sum which Gaither contracted to pay for the use during one year of such principal. Even upon the assumption that the loan was a "short-term" loan, and that interest at the maximum legal rate may lawfully be reserved on such a loan, we think it clear that usury was exacted of Gaither, and that for this reason the security deed executed by him was void.

<em>Judgment reversed. By five Justices.</em>