RANDOLPH *v.* BRUNSWICK AND BIRMINGHAM RAILROAD COMPANY *et al.*

1. The pendency of the first suit is ground for the abatement of a second suit for the same cause of action; but filing a second suit in the same court is no ground for the dismissal of a writ of error, previously sued out, to a ruling in the first action.
2. That the court erred in granting a nonsuit is a sufficient assignment of error on such ruling, and presents the question as to whether the evidence was sufficient to require the case to be submitted to the jury.
3. The evidence failed to show that the deceased had any defect in sight or hearing; it appeared that the track was straight and the view unobstructed; that the train was running on schedule time at a high rate of speed; that at a point 2,700 feet from a public crossing the deceased suddenly stepped upon the track, and that between the time he stepped thereon and the time he was struck it was impossible to have stopped the train and prevented the killing. This evidence warranted a judgment of nonsuit, regardless of the question whether there was a variance, or whether the deceased could not, by the exercise of ordinary care, have avoided the injury.

Argued July 14,—Decided August 12, 1904

Action for damages.    Before Judge Parker.    Glynn superior court.    January 23, 1904.

Mrs. Randolph sued the Brunswick and Birmingham Railroad Company and the Seaboard Air Line Railway for the homicide of her husband, alleging that he was killed by an engine of the latter company on the track of the former, where it crossed a private way.    She alleged, that he had a right to be on the track; that the defendants were charged with knowledge of the fact that some one might be and probably would be on the track; that they knew he was there, and negligently failed to stop the engine; that he was "approaching the track so that he could not see the engine and did not know of its approach;" that it was near a public crossing; that there was no whistling and no checking the speed of the engine; that there were persons besides the engineer and the fireman on the locomotive, and that this distracted the attention of the employees who should have been on the lookout.    The

plaintiff relied on the testimony of persons who did not see the deceased at the time of the killing, one of whom (not an employee of the railroad company) was riding on the engine.   It was proved that the engineer was on schedule time, running at the rate of twenty-five miles an hour; that the public crossing was about 2,700 feet from the place of the killing; and that the tracks of the deceased indicated that he was walking in the direction in which the train was going, and that he crossed the track of the Southern Railroad, which was not more than from fourteen to twenty feet from the track of the Brunswick and Birmingham Railroad, and walked almost parallel with the last-mentioned track, some twenty or thirty feet, then turned and walked diagonally across it, and was struck just after he stepped beyond the farthermost rail.

*Burton Smith* and *D. W. Krauss*, for plaintiff.

*F. E. Twitty, J. D. Sparks, Atkinson & Dunwody*, and *Crovatt & Whitfield*, for defendant.

LAMAR, J. (After stating the foregoing facts.)   1. The court granted a nonsuit.   The plaintiff sued out a writ of error.   On the call of the case here, the defendant presented a certificate from the clerk of the superior court, showing that after the bill of exceptions had been transmitted to the Supreme Court, the plaintiff filed another suit for identically the same cause of action; and thereupon the defendant moved to dismiss the writ of error, on the ground that the institution of the second suit was an acceptance and ratification of the judgment granting a nonsuit. Courts do not settle moot questions or deal with fictitious litigation; neither will they proceed to judgment where it is shown that the parties have settled their controversy, or that the judgment has been satisfied.   In such case the writ of error will be dismissed in the appellate court.   If on an application for injunction it appears that the act sought to be enjoined has been fully completed, a like dismissal will result.   *Tuells* v. *Torras,* 113 *Ga.* 691; *Gallaher* v. *Schneider,* 110 *Ga.* 322; *Owens* v. *Read Phosphate Co.,* 115 *Ga.* 768.   Compare *Sutcliffe* v. *McSweeney,* 102 *Ga.* 807; Little *v.* Bowers, 134 U. S 547.   But all these decisions relate to the conduct of the parties, or the condition of the subject-matter, in the suit then pending in the Supreme Court.

None of them rule that an action rightly brought and then undisposed of shall be dismissed because of the conduct of one of the parties in another and independent action. If the plaintiff had consented to the nonsuit (*Zorn* v. *Lamar*, 71 *Ga.* 81), or, after a judgment of involuntary nonsuit, had brought a new action and thereby yielded to the judgment before presenting a bill of exceptions, a different question might have been presented. But here she continued and preserved the original action by filing a bill of exceptions. The pendency of this former suit may have been good ground for abating the second, but the pendency of the second can not be used to abate the first. Civil Code, § 3737. This ground to dismiss the writ of error must be overruled.

2. The bill of exceptions recites that the court ordered a nonsuit; that plaintiff " excepted to the action of the court in granting said motion for nonsuit, and now excepts and assigns said action as error." The defendant moved to dismiss the bill of exceptions on the further ground that this was no proper assignment of error. The judgment is equivalent to a ruling that the plaintiff's evidence was not sufficient to prove the case as laid. The ruling was general, and so was the exception. The assignment was as specific as the judgment, and is sufficient to raise the question as to whether the evidence sustained the allegations of the petition. *Holst* v. *Burrus*, 79 *Ga.* 114; *Howell* v. *Pennington*, 118 *Ga.* 497.

3. The deceased was killed in the morning by a train running on schedule time at the rate of about twenty-five miles an hour. The place was not a public crossing, though it was used as a path by pedestrians. The track was straight and unobstructed. Had the deceased been upon the track he could have been seen by the engineer for more than half a mile. In like manner he could have seen and heard the engine for a long distance before it reached him. There was nothing to indicate that his sight or hearing was defective. All of the circumstances indicated that he was walking near the track in a place of safety, that he turned obliquely, walked, say twelve feet, across the track; and just failed to cross before he was hit by the rapidly moving engine. Considering the speed at which the locomotive was running, it is evident that it would have been impossible to stop the train between the time the engineer could have seen him in a place of

danger and the time that he was struck. On this ground the court might properly have granted the nonsuit, without considering any variance between the allegata and probata, or the further question as to whether the deceased himself could not have avoided the danger by the exercise of ordinary care. *Ivy* v. *East Tenn. R Co.*, 88 *Ga.* 71.

> *Judgment affirmed. All the Justices concur.*