PATTERSON, receiver, etc., *v.* BECK *et al.*, receivers.

1. The assets of a corporation were placed in the hands of a receiver under an equitable petition, and a creditor intervened, claiming priority of payment out of certain funds, on the ground that he had sued the corporation and garnished the holder of such funds shortly before the institution of the equitable action under which a receiver was appointed. It was agreed that any issue arising out of the garnishment suit should be heard by the presiding judge, there being no controversy about the facts, "the question being left for determination as to whether the garnishing creditor obtained any right to the funds so caught under the garnishment proceeding; this question is now before the court." The presiding judge held that such creditor obtained no priority over other creditors, to which judgment the creditor excepted. The bill of exceptions recited these facts, and stated that "the plaintiff in error excepts to said order of December 5, 1908 [the order stated above], and assigns the same as error, and presents this its bill of exceptions, and prays that the same may be certified and transmitted to the Supreme Court, in order that the errors therein complained of may be examined and corrected." *Held*, that the bill of exceptions was not subject to dismissal for lack of sufficient assignment of error.

2. A creditor of a corporation, who brought a common-law suit against his debtor and caused a summons of garnishment to be served upon a bank in which the debtor had funds on deposit, acquired no such lien on the funds in the hands of the garnishee as, ipso facto, to give him a right of priority of payment over other creditors, without regard to the date when their respective judgments should be obtained.

3. Under such facts, where a receiver was appointed for the assets of the defendant company, and the plaintiff intervened in an equitable proceeding, claiming priority of payment, and the question raised by his petition was submitted to the presiding judge under an agreed statement of facts, "all parties agreeing that any issue arising out of the suit in garnishment should be heard in this court, . . the question being left to determination as to whether the garnishing creditor obtained any right to the funds so caught under the garnishment proceeding; this question is now before the court," there was no error in holding that the garnishing creditor had no lien upon the funds in the hands of the garnishee which entitled him to priority over other creditors.

Argued June 8, 1909.— Decided January 11, 1910.

Petition and intervention. Before Judge Pendleton. Fulton superior court. December 5, 1908.

*Candlers, Thomson & Hirsch,* for plaintiff.

*Moore & Pomeroy* and *McDaniel, Alston & Black,* for defendants.

LUMPKIN, J. On May 2, 1908, Patterson as receiver in bankruptcy of the Newcomer-Manry Company, under authority from the

court of bankruptcy, instituted a suit in the city court of Atlanta against the Southern Construction Company, and caused summons of garnishment to issue and be served on the Fourth National Bank of Atlanta. The garnishee had funds of the defendant in its hands. On the same day the stockholders of the defendant company held a meeting and unanimously passed resolutions, that, for certain reasons recited, "the charter of the Southern Electrical Construction Company, and all its franchises and right thereunder, be now voluntarily surrendered to the State," and that attorneys be authorized in the name of the stockholders to file a petition making known to the court the surrender of the charter and asking that the court take charge of and administer all assets through a receiver. The Southern Electrical Construction Company and the Southern Construction Company were names of the same company. The attorneys accordingly filed the petition, to which the company through its president consented, and the judge of the superior court passed an order reciting that "the corporation has been dissolved by the surrender of its charter, which surrender is hereby accepted by the court, so far as is necessary under the law." He appointed a receiver, with instructions as to assets, operation, etc., and declared that "all the creditors of said Southern Construction Company may, by intervention, set up any valid claim against said company herein, and all such creditors are enjoined from proceeding on said claims in any other case or any other court." Patterson, as receiver in bankruptcy of the Newcomer-Manry Company, filed his petition setting out the facts and praying that "an order be passed by this honorable court, either modifying the order heretofore passed in the above-entitled cause so as to allow your petitioner to proceed with the suit in the city court of Atlanta, or, if said order is not so modified, that it be allowed to foreclose its lien in this honorable court, and that an order be directed to the Fourth National Bank of Atlanta, ordering said Fourth National Bank of Atlanta to make answer to the summons of garnishment to this honorable court." The case was submitted to the presiding judge on an agreed statement of facts. In addition to what appears above, it was recited, that, by order of the court, the Fourth National Bank made answer to the garnishment to the superior court, admitting that it had certain funds on hand, but claiming the right to apply a part of them to an indebtedness by the corporation

to it; that the balance admitted to be due was paid over to the receiver, and by order of the court held separately from other funds, "all parties agreeing that any issues arising out of the suit in garnishment should be heard in this court, . . the question being left to determination as to whether the garnishing creditor obtained any right to the funds so caught under the garnishment proceeding; this question is now before the court." The court reserved the question as to whether the bank was entitled to set off the claim held by it, and apply thereto a part of the fund which was on deposit. An order was passed declaring that "intervenor has no lien upon the fund garnished in the hands of the Fourth National Bank, and is entitled to no priority over creditors in said fund." The previous order requiring the receiver to hold the fund separately from the general fund was revoked. The intervenor excepted. The assignment of error is set out in the first headnote.

1. A motion to dismiss the writ of error was made, on the ground that there was no sufficient assignment of error. It is denied. In support of the motion counsel for defendant in error cited *Fidelity & Deposit Co.* v. *Anderson,* 102 *Ga.* 551 (28 S. E. 382) ; *Mayor &c. of Brunswick* v. *Moore,* 74 *Ga.* 409 ; *Mutual Building & Loan Assn.* v. *Glessner,* 99 *Ga.* 747 (27 S. E. 187) ; *Kimball* v. *Williams & McCurdy,* 108 *Ga.* 812 (33 S. E. 994) ; *Wheeler* v. *Worley,* 110 *Ga.* 513 (35 S. E. 639) ; *Collins* v. *Carr,* 111 *Ga.* 867 (36 S. E. 959) ; *Carter & Woolfolk* v. *Jackson,* 115 *Ga.* 676 (42 S. E. 46). . We granted leave to review such of these cases and the cases cited in them as apparently might conflict with the ruling now made. When carefully considered, none of them essentially conflict with the present ruling, though a misapplication of certain expressions used in some of them might lead to such a conclusion. A statement in *Wheeler* v. *Worley* and one in *Kimball* v. *Williams* approach more nearly to adverse declarations than any of the others. Section 5527 of the Civil Code provides that the "bill of exceptions shall specify plainly the decision complained of, and the alleged error." Section 5583 declares that "The Supreme Court shall not decide any question unless it is made by a special assignment of error in the bill of exceptions, and shall decide any question made by a specific assignment of error in the bill of exceptions." Both of these sections have long been in force. In 1896 the legislature passed an act, which is now codified in section 5569

of the Civil Code, whereby it is declared that "It shall be unlawful for the Supreme Court of Georgia to dismiss any case for any want of technical conformity to the statutes or rules regulating the practice in carrying cases to that court, where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case which the parties seek to have decided therein." Construing these sections together, they furnish a rule for bringing before this court questions for decision. The last-mentioned act was evidently intended to liberalize somewhat the former ones, or at least the construction which had sometimes been given to them. Rules of this character are made for a substantial purpose, not as mere technical pitfalls to catch the unwary. The decision complained of and the error alleged to exist therein ought to appear plainly. This is fair to the judge whose judgment it is sought to reverse, so that he can make such facts appear, or require such evidence and record to be brought to this court as may be necessary for a proper consideration of the errors complained of. (Civil Code, § 5528.) To allow a mere general assignment which, without more, would not direct the attention of the judge to the real question, and then to hunt for something covered up in such generalities as a ground for reversal, would be very much like allowing him to be ambushed. It is fair to the adverse counsel or party, in order that he may know what he must meet in this court. It is fair to this court, in order that there may be clear-cut questions for them to decide, and not an indefinite complaint for them to wander through in the search for questions to determine and errors to reverse. This is not a court of appeals, but a court for the correction of errors; and in order for it to deal with alleged errors intelligently, the questions to be decided should be made to appear. Let us take a few illustrations, that the necessity and propriety of such a rule, duly applied, may be shown. Suppose that a case were submitted to a judge without a jury, in which there were various issues of law and of fact, and that he should render a general judgment in favor of the plaintiff for a sum of money. What question would a mere general exception that this was error present to this court for decision? Would it mean that the judgment on the facts was contrary to the evidence, or without evidence to support it, or that the judgment was for too large a sum? Or that, without complaining

of the finding on the facts, there was some error of law? And what error? Thus in *Wade* v. *Watson,* ante, 608 (66 S. E. 922), the judge passed on issues both of law and fact, and there was a mere general exception. Even where there was an agreed statement of facts, it has sometimes been held that a mere exception to a general judgment by the judge without a jury was insufficient, as the real complaint might be that the judgment was too large or too small, or bore interest, or that the rate of interest used was wrong, or that there should be no recovery at all under the law, or perhaps other matters. Other instances might be added, but these will suffice. Where there are several things involved in a judgment, the thing complained of ought to be made to appear. This rule, however, is one of substantial practice, rather than a Procrustean rule of words. When this is borne in mind, and the language used in the various decisions is considered in the light of the facts of the respective cases before the court, if not all apparent conflict, at least most of it, practically disappears. Where a motion for a new trial has been overruled and exception taken to such judgment, one assignment of error in the bill of exceptions is sufficient to reach all of the grounds of the motion which themselves contain sufficient assignments of error. Supreme Court Rule 6. Taking the motion with the bill of exceptions, the error complained of is apparent, and the assignment need not be repeated. So of an exception to and assignment of error on overruling or sustaining a demurrer, where the grounds themselves show the points made and ruled on, and in connection with the bill of exceptions clearly show the errors assigned. *Huxford* v. *Southern Pine Co.,* 124 *Ga.* 181 (52 S. E. 439) ; *Johnson* v. *Porter,* 115 *Ga.* 401, 403 (41 S. E. 644). Again, where a verdict was directed and the bill of exceptions excepted to such ruling and assigned it as error, this was held to be sufficient, as meaning that the judge committed error in holding that the evidence, viewed in the light of the pleadings, demanded a finding against the plaintiff in error. *Howell* v. *Pennington,* 118 *Ga.* 494 (45 S. E. 272). So likewise as to an exception to the grant of a nonsuit. *Randolph* v. *Brunswick & B. R. Co.,* 120 *Ga.* 969 (48 S. E. 396). And where a single distinct question was raised in regard to a motion to dismiss an appeal, on the ground that it was not entered by the adverse party in the justice's court, but by a third party, and over objection an amendment was allowed chang-

ing the name of the appellant, a bill of exceptions reciting the specific ruling of law made, excepting to the judgment and assigning the ruling as error, was held sufficient. *Head* v. *Marietta Guano Co.,* 124 *Ga.* 983 (53 S. E. 676). In *Mutual Building and Loan Assn.* v. *Glessner,* supra, where a case involving questions both of law and fact was tried by the judge without a jury, and a judgment was rendered for the plaintiff, and direct exception taken without a motion for a new trial, a mere statement that the defendant excepted and assigned the judgment as error was held insufficient. It was said that it ought at least to have been stated whether the judgment was complained of as contrary to the evidence or to law, or to both, and that "it was never contemplated that this court should search around in a loose and general way to discover errors not brought to its attention with, at least, a reasonable degree of certainty." In *Hart* v. *Phenix Ins. Co.,* 113 *Ga.* 859 (39 S. E. 304), in an action on promissory notes, the court, on general and special demurrer, struck an answer, rejected an amendment, and rendered judgment for the plaintiff. The bill of exceptions specifically assigned error on the order in regard to the amendment, and also in general terms complained of the judgment. Under this general assignment it was argued that the judgment was not correct as to the amount, that the contract was not unconditional, and that the court had no authority to render a judgment without a jury. This court decided the question raised by proper assignment of error, but declined to pass on the points thus sought to be set up under the general assignment, saying that there was nothing in the bill of exceptions to show that any such points were made or passed on by the trial court. In *Carter & Woolfolk* v. *Jackson,* supra, it was said that if the bill of exceptions meant to allege that the general judgment was based on certain specified "holdings," and that these were erroneous, this was sufficient; and construing the bill of exceptions in the light of the record, it was held that such was the meaning. We think what has been said will serve to show the propriety of the rule, but at the same time that it is a rule of substance, not of words—a requirement based on sound reason, not a mere filigree of technical formula. See also discussion in *Lyndon* v. *Georgia Ry. & El. Co.,* 129 *Ga.* 353 (58 S. E. 1047); *Crossley* v. *Leslie,* 130 *Ga.* 782 (61 S. E. 851).

Applying these principles to the present case, it is clear that the

motion to dismiss must be overruled. It is distinctly shown that there was no controversy about facts; that only one question of law was submitted to the court; that the court decided it adversely to the contention of the plaintiff in error, and entered a judgment against him; and that the latter excepted and assigned this as error. Good practice required no more. Nothing more could well be said, except that the ruling as to this question of law was error because it was wrong. The law requires no such repetition. The main line of decision involved in the cases reviewed is right, when properly applied. Only such expressions as may conflict with what is here ruled are modified.

In regard to cases of injunction, where the question usually is whether a judge abused his discretion in granting or refusing the writ, a somewhat more general assignment of error has been held sufficient to withstand a motion to dismiss. *Anderson* v. *Newton*, 123 *Ga.* 512 (51 S. E. 508) ; *Kirkland* v. *Atlantic & Birmingham Ry. Co.,* 126 *Ga.* 246 (55 S. E. 23). But even in such cases, under a general assignment alone, such special questions as the constitutionality of an act, the legality of time of the hearing, whether there was sufficient service, or the like, not shown to have been passed on, do not arise for decision.

We are aware that this is a long discussion of a rule of practice, but we trust that it will not be unprofitable. The point is raised in this court again and again. Like Banquo's ghost, it will not down.

2. In the brief of counsel for plaintiff in error, it was urged that there was no authority of law for a corporation to surrender its charter to the superior court, and for the court to accept it, thus resulting in a legal suicide being permitted in the face of a pending suit and in a destruction of the right of the plaintiff to proceed for want of a party defendant. The defendant corporation passed a resolution seeking to surrender its charter, and all of its stockholders filed a petition for a receiver to wind up its affairs. The judge of the superior court passed an order appointing a receiver, in which it was recited that the corporation "has been dissolved by the surrender of its charter, which surrender is hereby accepted by the court so far as is necessary under the law." It was provided that all the creditors of the corporation might, by intervention, set up their claims against the company in that litigation, and all such creditors were enjoined from proceeding in any other case or in

any other court. The plaintiff in error, who was the receiver of the bankrupt company (or the trustee, as he is called in the agreed statement of facts), and who had sued the corporation in another court and caused summons of garnishment to be served upon a bank in which the company had deposited money, intervened in the equity proceeding, after the appointment of the receiver there, and prayed that an order be passed, either modifying the previous order so as to allow the petitioner to proceed with his suit, or, if the former order was not modified, that he, as receiver of the bankrupt corporation, be allowed "to foreclose its lien in this honorable court, and that an order be directed to the Fourth National Bank of Atlanta, ordering said Fourth National Bank of Atlanta to make answer to the summons of garnishment to this honorable court." In the agreement submitting the case to the presiding judge without a jury was contained the statement that the receiver appointed by the superior court had, under order of the court, collected the amount conceded to be due by the bank, and held it separate and apart from other funds of the company, "all parties agreeing that any issues arising out of the suit in garnishment should be heard in this court, . . the question being left to determination as to whether the garnishing creditor obtained any right to the funds so caught under the garnishment proceedings; this question is now before the court." Thus any objection to the jurisdiction of the court or to the appointment of the receiver or to the propriety of the effort to surrender the charter was waived, and the parties agreed to narrow the issue to a single question, and to have it determined by the judge of the superior court.

The only question, therefore, for consideration is whether the plaintiff, who had brought suit in a city court and caused a summons of garnishment to be served on the bank, where the corporation had funds on deposit, a few days before the order of the judge of the superior court appointing a receiver, obtained such a lien or priority over other creditors, by virtue of such garnishment, that he had a right to have the fund which had been in the hands of the garnishee paid to him on account of the indebtedness of the corporation. This is not a case of bankruptcy, and involves no question of whether a garnishment proceeding was rendered void by an adjudication in bankruptcy, such as was considered in *Armour Packing Co.* v. *Wynn,* 119 *Ga.* 683 (46 S. E. 865), and Metcalf *v.*

Barker, 187 U. S. 165 (47 L. ed. 122, 23 Sup. Ct. 67), or similar cases. It is a question of priority over other creditors claimed by virtue of the service of a summons of garnishment before the appointment of a receiver.

The garnishment was not based on an attachment, but on a common-law suit. By the act of 1822 provision was made for the issuing of garnishments where a suit was pending or where a judgment had been obtained. In the 5th section it was declared that "When any money shall be paid into court, or shall be raised by the sheriff or his deputy, or by a constable, under this act, the same shall be paid over to judgments or executions against the defendant, as in other cases, according to the priority established by law." Cobb's Digest, 78. Under this act it was held in *Willis* v. *Parsons*, 13 *Ga.* 335, that where several suits were instituted by different creditors against the same defendant, pending which one of the creditors sued out a summons of garnishment in accordance with the provision of the act cited, by which a considerable sum of money was raised and paid into court, and judgments were obtained in all of the suits at the same term of the court, the money raised by the garnishment should be paid over to the holders of all such judgments pro rata. Warner, J., delivering the opinion, said: "We do not understand that garnishments issued according to the provisions of the act of 1822 stand upon the same footing, in regard to liens created thereby, as garnishments issued in attachment cases. It is true, that act intended to afford a new remedy in certain cases therein specified, by authorizing summons of garnishment to issue, 'as in cases of attachment,' but not to create a lien as in cases of attachment. The 5th section of the act regulates the manner in which the money paid into court under the proceedings authorized by it shall be paid over." As between judgments their priorities are determined by the time of their rendition, and an older judgment will take a fund brought into court by a garnishment based on a younger judgment, or on the suit in which the younger judgment was rendered. The service of the summons gives to the holder of the junior judgment no prior right in the distribution of the funds. It no doubt frequently happened that a diligent creditor would bring a fund into court at his own expense and see it taken from him by a judgment older than his, leaving him to pay the expenses, while the senior judgment reaped the benefit

without expense. To correct this inequitable result a provision was added. In the Code of 1863, § 3469 (Code of 1895, § 4724), is the following: "All money raised by virtue of the process of garnishment under this code shall be paid over to the creditors of the defendant, according to the priorities now established by law — the expenses of the moving creditor being first paid pro rata by the judgment creditors receiving the benefit of his diligence." There is nothing in the section which changes the rule as to the priority in distribution of the fund raised by garnishment, or which places a garnishment issued on a common-law suit upon the same basis as one issued on an attachment and operating substantially as a levy of the attachment. The lien of an attachment is created by the levy, and not by the judgment on the attachment. In case of a conflict between attachments, the first levied should be first satisfied. As the law stood prior to the act of 1891 (Acts 1891, p. 75), in a contest between attachments and ordinary judgments or suits, it was the judgment and not the levy which fixed the lien. This is still the law, with the proviso made by that act, that the lien of an attachment shall have priority over the lien of an ordinary judgment that has been obtained upon a suit filed after the levy of the attachment. Civil Code, § 4578. The plaintiff in error has obtained no judgment on his claim, and presumably all the intervenors in the equitable proceeding will obtain judgments or decrees of equal rank as to time. The mere service of the summons of garnishment, therefore, gave the plaintiff in error no right of priority of payment. See *Mendleson* v. *Pardue, 57 Ga.* 202; *Hall & Ruckel* v. *Daniel & Marsh, 62 Ga.* 620.

*Judgment affirmed. All the Justices concur.*