### 24503. HUNT v. POLLARD, receiver.

DECIDED OCTOBER 4, 1935.

*Winfield P. Jones, Louis H. Foster, Carroll Payne Jones,* for plaintiff.

*Little, Powell, Reid & Goldstein, James K. Rankin,* for defendant.

STEPHENS, J. Mrs. M. L. Hunt sued the receiver of the Central of Georgia Railroad Company for damages on account of the homicide of her husband. She alleged that just before his death he was peddling fruit, vegetables, etc., and that, in the course of this business he visited a "camp" car of the company which was parked on a siding parallel to the main track in the town of Hapeville at a point within 50 feet of a street crossing, that there was also a private crossing leading up to the place where the camp car was standing, which was much used by the public; and that "pedestrians were crossing and recrossing said main and side tracks at said time and place and were standing at and upon the strip of ground not exceeding five or six feet in width between said 'camp' car on said side track and said main track at said place," that her husband had gone to the camp car, was standing on the ground between the camp car and the main track and was talking to the cook who was standing in the open door in the camp car, when a pas-

senger train traveling at a reckless speed of 50 to 60 miles per hour, without warning of any sort, crashed into her husband and caused his death, that just before the train arrived he was actually engaged in holding up to the cook, at the cook's invitation, a basket of fruit and vegetables. There were other allegations to the effect that a string of cars coupled to the camp car and a curve in the track obstructed the view of the engineer and fireman so that they could not see anyone standing on the strip of ground where the plaintiff's husband was located until the train had passed over the public crossing located south of the camp and box cars, and that the box cars and the curve in the track also obstructed the view of the approaching train from anyone standing where the plaintiff's husband was standing, that the defendant knew and in the exercise of ordinary care ought to have known that persons were walking up and upon the main and side tracks and were dealing with the defendant's employees attached to the camp car and that persons were standing at and upon the strip of ground which did not exceed 5 or 6 feet in width before the camp car and the main track at the place where the plaintiff's husband was killed, that the cook who knew of the plaintiff's husband's perilous situation failed to warn him of the approaching train, that the train was 30 to 40 minutes late. The plaintiff charged that the alleged acts of the defendant amounted to negligence. The plaintiff further alleged that for a considerable time prior to the death of the plaintiff's husband and at the place alleged, the camp car or camp cars were notoriously, constantly and continuously operated and maintained by the defendant's employees with the knowledge and consent of the defendant and under the defendant's directions and that during said time and at said place "the plaintiff's husband and other persons were openly, constantly, continuously and notoriously crossing and recrossing, standing upon or near or otherwise using the same main railroad track and said side track upon the said public street of said township, selling and delivering fruits, vegetables, meats and other food products and trading in them with said cook and/or his assistant and the said employees of said railroad with the knowledge, consent and acquiescence of the defendant and the responsible officers of said railroad acting under the defendant's direction," that there was at the place where the camp car was located and the box cars used in connection with the camp car and just south of the

camp car and the box cars connected therewith a private crossing or path which approached the main line and side tracks of the defendant "which said private crossing or private path leading up to and across said tracks at said time had for a considerable time prior thereto been in open, continuous, constant, and notorious use by pedestrians, and plaintiff's husband and other pedestrians had during the time said 'camp' car was situated at said place and for a considerable time prior to the time of the homicide of plaintiff's husband, been using said crossing or private path up to and over said main and side tracks with the knowledge and consent of the defendant." The plaintiff charged that the defendant was negligent in failing to keep a lookout upon the engine and in failing to keep the engine under control as it rounded the curve so as to avoid striking the plaintiff's husband or other persons whom the defendant had reason to apprehend might be on or near said place.

There was evidence that the plaintiff's husband was struck by the train and killed in substantially the manner alleged in the petition, the train was traveling at a speed of 25 to 35 miles an hour approaching close to the railroad station in the City of Hapeville which was a city of several thousand inhabitants, that it had just passed over one crossing and was headed towards another one when the plaintiff's husband was killed, but it appears that the plaintiff's husband was not on the crossing, and it does not appear that he was within 50 feet of the crossing. There was evidence that the box cars and the camp car were present as alleged and that it was the custom of the plaintiff's husband to go to the camp car and vend his wares to the defendant's cook. There was evidence that there was a pathway across the tracks of the defendant and that people were accustomed to cross over the tracks of the defendant at or immediately near the place where the plaintiff's husband was killed. There was evidence that south of the camp car, and in the direction from which the train was coming, the track was perfectly straight for a quarter of a mile to half a mile and the view was unobstructed. As to the allegations that the whistle was not blown, there was evidence from witnesses who were in a position to hear the whistle blow, that they did not hear the whistle blow before the train reached the place where the plaintiff's husband was killed. These witnesses had on former occasions heard the whistle blow at this point. Two witnesses seem to have stated that it was blown.

The witness McConnell testified "I had heard him whistle before-hand, but did not pay any attention to it; and when these blasts came and I went to the door and looked out" etc. The witness Blount testified: "I had heard the blowing. . . It was either a steam whistle or an air whistle. It was a long, moaning sound.. I heard that at the time the train was a considerable distance down the track." Blount was the only eye-witness. He was seated in an automobile at a distance of about 100 feet from the camp car. He testified that he saw Hunt killed; that the train was traveling north at a speed of 25 to 35 miles an hour; and that "this man got caught between the box cars and the train, and the train hit him. I think there were three cars down there, and he was standing just about the center of the line of cars. He had some fruit, and he had just taken a basket down from one of the section men that was standing up inside of the car. He was walking backward at the instant he was hit. I imagine that was the cook in the car there. As the train was coming up the track, he was talking to this man, and when the train got, I imagine, maybe between 50 and 100 feet away, he handed the basket down to this man and turned and walked back into the car, and this man took several steps back-wards and by that time the train was there and hit him." There was no direct evidence supporting or denying the allegation of negligence that the defendant failed to keep a lookout as alleged in the petition. There was evidence as to the value of the life of the plaintiff's husband.

It is alleged in the petition that the defendant had knowledge of the condition of the locality where the plaintiff's husband was killed, and that people including the plaintiff's husband were, with knowledge of the defendant, likely to be where the plaintiff's husband was when he was killed, and it is alleged that the defendant, with knowledge of these facts, was negligent in not keeping a lookout upon the engine so as to avoid striking plaintiff's husband and other persons who the defendant had reason to apprehend might be upon or near the place where the plaintiff's husband was killed. It is held in the case of *Western & Atlantic Railroad Co.* v. *Michael,* 175 *Ga.* 1 (165 S. E. 37), on the authority of cases there cited that under the circumstances as thus alleged, those in charge of the operation of the defendant's train are "under a duty to take such precautions to prevent injury to such persons [that is persons in

952

the situation of the plaintiff's husband] as would meet the requirements of ordinary care and diligence." *L. & N. R. Co.* v. *Arp,* 136 *Ga.* 489 (71 S. E. 867); *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.* 759 (2) (154 S. E. 718); *Simmons* v. *A. & W. P. R. Co.,* 46 *Ga. App.* 93 (166 S. E. 666). In *Crawford* v. *Southern Railway Co.,* 106 *Ga.* 870 (33 S. E. 826), where this same principle is announced it is stated by the court in the opinion as follows: "taking the locality where the train is running and all the surrounding circumstances, if those in control of the movement of the train have no reason to apprehend that there may likely be a human being on the track in front of the engine, they are under no duty to one who may in fact be there, until they have actually discovered that he is there. But if, from the locality or surrounding circumstances, there is reason to apprehend that the track in front of the locomotive may not be clear of human beings, then, it seems to us, it is the duty of the employees of the company to keep a lookout ahead of the train; most assuredly so unless they are performing some duty which prevents their looking out upon the track in the direction in which the train is moving." There is no evidence whatsoever tending to deny the allegation of negligence that the defendant while charged with the duty to anticipate the presence of persons on or near its track at the time and place, negligently failed to keep a lookout on its engine by and through those operating its train so as to avoid injury to a person in the situation of the plaintiff's husband. It is inferable from the evidence as to the straightness of the track at the place, and the manner in which the plaintiff's husband was killed and other circumstances appearing in the evidence, that the defendant failed to keep such a lookout as described. If the evidence is insufficient to authorize an inference that the defendant failed to keep the required lookout, and there is no evidence whatsoever tending to deny this alleged fact as an allegation of negligence, the plaintiff would then be entitled to the benefit of the presumption statute (Ga. L. 1929, p. 315). This being the case, in passing upon the sufficiency of the evidence to withstand a nonsuit it must be taken as if this allegation of negligence is proved prima facie. *Seaboard Air-Line Ry. Co.* v. *Fountain,* 173 *Ga.* 593 (160 S. E. 789). This would seem to be true notwithstanding the presumption as to other allegations of negligence may have disappeared upon the introduction of evidence tending to prove the contrary.

The plaintiff's husband, all the time he was between the camp car and the defendant's main track which was a narrow space of 4 or 5 feet, was in a position of peril and likely to be hit by an approaching train. It is clearly inferable from the evidence that his attention was not attracted to the oncoming train, and that when, with his back to the main track, he was passing his basket between himself and the cook in the camp car, he was not in a position where it could be assumed, had he been seen by the engineer of the approaching train, that he would get into a position of safety or that he would not step back as he did into the line of the approaching train. The cases relied on by the defendant in error where the person injured is apparently in a position of safety or apparently observing an approaching train, the engineer not being bound to anticipate that such person would move from a place of safety into one of danger, and cases in which a person voluntarily places himself in the way of a moving train, are distinguishable. See *Gordon* v. *Atlantic Coast Line R. Co.*, 21 *Ga. App.* 812 (95 S. E. 311); *Southern Ry. Co.* v. *Eubanks,* 117 *Ga.* 217 (43 S. E. 487); *Randolph* v. *Brunswick & Birmingham R. Co.*, 120 *Ga.* 969 (48 S. E. 396); *Moore* v. *Southern Ry. Co.*, 136 *Ga.* 872 (72 S. E. 403); *Fowler* v. *Georgia Railroad &c. Co.*, 133 *Ga.* 664 (66 S. E. 900); *Lowe* v. *Payne,* 156 *Ga.* 312 (118 S. E. 924); *Central R. Co.* v. *Smith,* 78 *Ga.* 694 (3 S. E. 397); *While* v. *Central of Ga. Ry. Co.*, 83 *Ga.* 595 (10 S. E. 273).

The plaintiff's husband in going in between the tracks to the camp car for the purpose of vending his wares to the employees of the defendant, where this was permitted by the employees of the defendant, and was for their benefit, was a licensee. It can not be said that his presence there was negligence as a matter of law. While dealing with one of the defendant's servants, and being oblivious to the approach of the train he unconsciously and unintentionally stepped back and got in its way, it can not be said as a matter of law that he was guilty of negligence barring a recovery. A jury might have concluded that he was not negligent under the circumstances, or that if he was negligent, his negligence did not bar a recovery but might reduce the damage in proportion to his negligence.

The evidence was sufficient to authorize a verdict for the plaintiff, and the court erred in granting a nonsuit.

954

*Judgment reversed. Sutton, J., concurs. Jenkins, P. J., dissents.*