THE ROME RAILROAD COMPANY *v.* TOLBERT.

1. Where a person not an employee, without permission of a railroad company and against its will and without its knowledge, goes into a yard covered and interlaced by tracks, which is being used by the company, by its engines and cars, in switching, drilling and changing cars, such person is bound to use diligence commensurate with the peril in which he has placed himself; and if he fail to do this, he cannot recover for any injury he may sustain from the running of the engines and cars of the company.

2. Under such circumstances, the company would owe the trespasser no duty other than not to injure him if they knew or saw him in · time to prevent it.

3. The company would not be bound to look and watch for such

person as it would for one of its own employees, and as it would for a person on its main line of travel while going on its accustomed duties in transporting persons and things from one place to another.

May 7, 1890.

Negligence.    Railroads.    Before Judge MADDOX. Floyd superior court.    September term, 1889.

Tolbert's declaration alleged, in brief, that he was going, in daylight, from his work in Rome to his home, and was walking in the direction of the railroad bridge across the Etowah river, walking between tracks of defendant, a way of travel in daily use by citizens of Rome and foot-travelers, passing to and from the city and to and from their places of business, with the knowledge of and without objection on the part of defendant. In front of the place where he was injured there were several tracks of defendant, and on one of them was an engine of the E. T., V. & Ga. Railway Company, or of defendant, approaching petitioner, and while he was avoiding that engine his back was to the depot of defendant, and its engine and cars or engine or tender was driven against him from his rear. The employees of defendant who were in charge of the engine and tender and cars did not exercise diligence or proper care in the running of its cars. No whistle was blown, no bell was rung, nor any signal or alarm given to put him upon notice of its approach. He did not hear nor know of its approach till he was knocked down and injured. He was struck in the back, knocked to the ground and his collar-bone broken. The declaration then sets forth the extent of his injury, earnings, suffering, etc. The suit was for $1,000. The declaration was amended and the following allegation made: When he went over the track of defendant and started down the yard between the tracks, he looked up defendant's road and saw its engine, tender and cars, composing the train

that struck him, standing still near its depot north of the point above referred to, the same being near a public crossing, and the engine backed down with the tender in the rear next towards him, without notice or warning to him, and struck him as before stated.

This declaration was demurred to, on the ground that no sufficient cause of action was set out in it. The demurrer was overruled. The defendant pleaded the general issue. Also, that if plaintiff were injured at all, it was the result of his own wrong doing, while trespassing on defendant's property. Also, that if plaintiff were injured, it was caused solely by his gross negligence and carelessness, and could have been easily avoided by the use of ordinary care and diligence on his part.

The testimony for plaintiff tended to show that on November 2, 1887, late in the afternoon, in daylight, he was going to his home in South Rome. The nearest and most convenient way for him to reach his home was by going through the railroad yard of defendant, and he had been going that way for two years. He passed along the platform of defendant's depot and got off the platform and walked along between the tracks in its yard. When he left the platform he saw the engine and train of defendant, by which he was afterwards struck, standing still north of the depot near a street-crossing. He walked along between the tracks, and as he was approaching and near to where two tracks came together, an East Tennessee engine came down a track towards him, and the engine of defendant backing with the tender behind it also came towards him. He saw the East Tennessee engine coming, but did not know of the approach of the other, which gave him no signal of its approach, either by ringing the bell or blowing its whistle, although he was very near to where there was a crossing commonly used by the public in going across defendant's yard. The two tracks were so close to-

gether that, while there was room for him to stand between them at the point where he was struck, there was not room for the engine to pass him at the same time in safety to him, and he was struck by the tender of defendant's engine and was knocked down and his collar-bone broken. The place where he was walking was quite commonly used by foot-passengers, as set out in his declaration, and had been so used for a long time with the knowlege of defendant. If plaintiff had stepped back a little he would not have been hurt, or he could have walked safely by stepping across the track on which defendant's engine was running, where he could have been between other tracks, but with a wider space, so that he would have been in no danger. He knew that he was in a dangerous place It was a busy time of the year with defendant, and much freight was being handled. Defendant's train was moving four or five miles per hour. It was over a month before plaintiff could go back to work, and he was not able to go to work when he did do so ; he just had it to do and endure a great deal of pain ; it interfered with his sleeping, and, his business being that of a carpenter, his shoulder still pains him so that he cannot use it as before ; he cannot carry anything on his shoulder without its hurting him, etc. He was earning $1.50 per day at the time he was hurt, and his physician's bill was $25. He did not remember telling the president of defendant that he stepped back to get out of the way of the East Tennessee engine. He did not step out of the way, because he did not have time to do so. The fireman on defendant's engine told him that, at the time he was hurt, he (the fireman) was banking the fire to knock the clinkers out of the grate. Plaintiff also put in evidence section 396 of the code of Rome, but what that section is is not stated in the record.

The testimony for the defendant tended to show that

neither its engineer nor fireman knew that plaintiff had been struck; neither of them saw him; and the fireman denied that he made the statement testified to by plaintiff. The evidence also tended to show that the bell was being rung; that plaintiff was not struck at the point where he claimed to have been struck; that the two engines were not approaching each other coming from different directions, but were running in the same direction; that plaintiff could have easily avoided the injury, even though he had walked through the yard on his way home; that by making but a short *détour* he could have reached home without going through the yard; that defendant had not consented to the use of its yard by the public, and had endeavored to prevent such use; that it had had notices posted up at different places in the yard, near its baggage-room and at other points, and one close to where plaintiff was said to have been hurt, warning everybody to keep off the tracks; and that defendant's president had had a personal difficulty with two men trying to prevent them from walking across and up and down the track, and it was impossible for defendant to prevent people passing through the yard. Plaintiff told the president of defendant that he was watching the East Tennessee engine, which was passing him, and stepped back to get out of its way, and defendant's train was passing and struck him on the shoulder and knocked him down.

The jury found for the plaintiff $300. The defendant moved for a new trial, which was refused; and exception was taken.

W. W. BROOKES, for plaintiff in error, cited 82 *Ga.* 405, 804, 667, 581, 112, 206; 80 *Ga.* 631, 727, 197; 79 *Ga.* 128, 259, 610; 78 *Ga.* 695, 700; 74 *Ga.* 610, 867; 71 *Ga.* 427; 70 *Ga.* 207, 246; 60 *Ga.* 668; 52 *Ga.* 410; 56 *Ga.* 125, 552; 28 *Ga.* 95; 19 *Ga.* 444; 6 *Ga.* 598; 83 *Ga.* 759; 2 Am. St. Rep. 157; 4 *Id.* 189; 8 *Id.* 812; 9 *Id.* 436, 630; 85 Ill. 80; 95 U. S. 697.

C. A. THORNWELL and J. BRANHAM, *contra*, cited 82 *Ga.* 258, 400; 80 *Ga.* 727; 79 *Ga.* 44; 78 *Ga.* 697; 76 *Ga.* 783; 74 *Ga.* 857; 71 *Ga.* 427; 70 *Ga.* 208; 37 *Ga.* 593.

BLANDFORD, Justice.

We think, under the facts set out in this record, that the jury were unwarranted by law in their finding in this case. See the facts fully set forth in the official report of the case.                    *Judgment reversed.*