THE SAVANNAH, FLORIDA AND WESTERN RAILWAY
COMPANY *v.* WALLER, by next friend.

Mere permission by or implied license from a railway company
for children to enter its yard for the purpose of carrying meals
to their fathers, there being a perfectly safe way for the chil-
dren to pass and repass without going under freight-cars
standing upon tracks in the yard, will not subject the com-
pany to liability for injuries caused to one of these children
by pushing upon him a car under which he had suddenly gone
for the purpose of getting a ball which had been thrown there,
but for the throwing of which the company was in no way
responsible, and it not appearing that the company's servants
by whom the car was put in motion knew, had reason to
know, or were in a position to discover that the child was
under it at the time. The sudden throwing of the ball, the
child's being attracted thereby and his rapidly following it
under the car, all together constituted an emergency which
the company could not reasonably have anticipated or guarded
against; and consequently the unexpected catastrophe which
resulted from the movement of the car at the very moment
when the child was exposed to danger, was a mere casualty or
accident for which the company should not be held liable.

*Atkinson, J.,* dissenting.—1. Where by permission of its officers
the yard of a railroad company where its trains are con-
stantly drilling, is frequented at a given hour daily by young
children, who come there on lawful business, such permission,
when acted upon regularly for a number of years, is at least
notice to the company of the probable presence of such
children at such place at such hour, and in the running and
drilling of its cars during the time when they are usually
present, the company is bound to exercise such care as would
afford reasonable protection to any of such children as, hap-
pening to be upon the yard, might have casually strayed, or by
some object been allured, upon one of its tracks; and the
measure of precaution so to be taken is to be estimated with
reference to the apparent peril of the position, coupled with
the capacity of the child to know and appreciate its danger,
and the absence, or probable absence, of such discretion as
would enable it to take proper measures for its own pro-
tection.

2. Where, in an action against a railroad company for damages
for personal injuries inflicted, it appears that in switching its
cars a train of the company was run backward through its
yard at a time during the day when, with the permission of
the officers of the company, young children, not of sufficient

discretion to take precautionary measures for their own safety, were accustomed to assemble there, and that one of such children, running under a stationary car to get a ball which had been thrown there, was run over and injured in consequence of this car being suddenly put in motion by the backing train coming in contact with it, and where it further appears that no lookout was stationed upon the rear of said backward moving train, or elsewhere thereon so as to command a view of its movements and give notice to those in charge of the engine of danger to one of such children who may have either casually strayed upon the track, or who might by any means have been allured thereon, and where it further appears that no other equivalent precautionary measures were taken to prevent injuries which might have been probably thus inflicted, a verdict of the jury finding against the defendant upon the question of negligence and awarding damages for the jury, is supported by the evidence, and is not contrary to law.

August 16, 1895.  Argued at the last term.

Action for damages.    Before Judge MacDonell.    City court of Savannah.    July term, 1894.

The plaintiff, a boy of seven years and nine months, was caught under a moving car of the railroad company, and his right leg was so crushed as to render necessary an amputation just below the knee.    His father was employed by the company as a laborer in repairing cars, his place of work at the time being in the company's yard in the city of Savannah, on the other side of the track where the injury occurred from that where his home was situated.    For about a month the plaintiff had been bringing his father's dinner, and was accustomed to go across the track for this purpose.    This practice by plaintiff and others was known to the company, and the time allowed for dinner (thirty minutes) did not admit of the father's going to his home for the same.    On the day in question, about one o'clock, the plaintiff had carried the dinner and was returning.    At the same time three employees of the company, other than his father, were engaged in throwing and catching a ball from either side of the track where the injury occurred. As plaintiff approached, walking on the space between two tracks, the ball was thrown towards one of the men who

failed to catch it, and it bounced upon a cross-tie and went under the end of the last of a number of freight-cars standing still upon the track. One of the men said to plaintiff, "Sonny, get that ball." He thereupon ran for it, and it seems that some negro boys were running for it at the same time. Plaintiff went upon the track and then under the end of the car, putting his foot upon the brake-beam and reaching for the ball. While in this situation, the standing cars were struck at the other end of the train by a number of other cars pushed by the company's engine for the purpose of making a coupling. They rolled twenty or more feet and plaintiff was knocked down two or three times in the effort to escape, and succeeded in doing so only with the loss of his leg. He brought suit for damages, and obtained a verdict against the company for $4,000. The company excepted to the overruling of its general demurrer to the declaration, to the denial of a nonsuit, and to the refusal of a new trial.

*Erwin, duBignon & Chisholm*, for plaintiff in error.
*William W. Gordon, Jr.*, contra.

Lumpkin, Justice.

The nature of this case may be gathered from the recitals in the head-notes, there being no substantial conflict, in so far as they relate to the facts, between the one announced by a majority of the court and those in which Justice Atkinson expresses his dissent to the judgment rendered. We differed, however, in applying the law to the facts.

Unless the railway company was negligent relatively to the child who was injured, he was not entitled to recover. It was not, as to him, negligent unless it violated some duty which it owed to him with reference to the particular act by which the injury was occasioned. It cannot be denied that a railway company has an undoubted right to shift and move freight-cars at its pleasure upon the tracks in its yard; nor that under ordinary circumstances, it would be

under no obligation to keep a watch upon the movement of these cars for the purpose of preventing an injury to a child, or any other person, who might casually happen to be upon one of the tracks when a car was set in motion.

It is insisted, however, that as the plaintiff was one of a large number of children who were permitted by the company to enter its yard for the purpose of carrying meals to their fathers, who were employees in the service of the company; and that as it was known to the company these children were likely to be in the yard at, or about, the dinner hour, and would probably go under standing cars, it owed to them a duty of seeing to it that such cars were not suddenly put in motion so as to endanger their lives or limbs. We do not think that the mere permission by the company for these children to enter its yard for the purpose stated, carried with it, under all conceivable circumstances, a duty so sweeping as this, there being a perfectly safe way for the children to pass and repass while in the yard, without going upon the tracks where cars were standing, and no occasion for their going under the cars at all. Certainly the invitation by the company to the children, if the above mentioned permission or license may properly be so termed, did not contemplate that they should go under, or so near to, these cars as to become in danger. But it is said the company might have foreseen that, because of their indiscretion and want of judgment arising from their tender years, these children were liable to exceed the license they actually had, and that the company ought, accordingly, to have taken the proper precautions to insure their safety in case they should do so. Granting that this would be true, if the injury to the plaintiff had happened while things were going on in the usual and ordinary way in the company's yard, we feel constrained to hold that this particular injury was, at last, the result of a mere casualty. Conceding, for the sake of the argument, the company was under a duty, in the usual course of its busi-

ness in its yard, to see that a car was not put in motion while one of these children was under it, or just in front of it, it would then have to take the chances of becoming liable for an injury resulting in this way; but we do not think the company was under the burden of taking all the chances of what occurred in the present case. It had nothing to do with the throwing of the ball; it could not foresee or prevent the ball's going under the car, or anticipate that the child would be attracted by it and would rapidly follow it. It does not appear that the servants of the company by whom the car was put in motion actually knew, had reason to know, or were in a position to discover, that the child was under the car at the time it received the impetus which sent it forward. Indeed, the engineer handling the locomotive attached to the train of cars which came in contact with the standing car, was a considerable distance from the latter when the train struck it. Taking all the facts together, the Chief Justice and the writer are of the opinion that they constituted an emergency not reasonably to be anticipated, and that the unexpected catastrophe resulting from the movement of the car at the precise moment when the plaintiff was exposed to danger should be treated as a mere accident. The particular combination of circumstances by which his injury was occasioned would very rarely exist. Just such a thing as this would not probably occur once in ten years, though hundreds of children should, during that period, enter the company's yard for the purpose above mentioned. It cannot, we are quite sure, be fairly insisted that to guard against and prevent a calamity of this kind, any higher or greater degree of diligence should be required of the company than ordinary diligence. There is no rule of law, nor any precedent, which, in our opinion, would justify a court in holding that the company, in view of its relations to the plaintiff, under all the circumstances disclosed by the evidence, was bound to exercise more than ordinary care for

his safety. Assuming the correctness of this position, it follows that if, in order to make the company liable, the rule of extraordinary diligence must be put upon it, there could be no lawful recovery. We are satisfied that nothing short of "that extreme care and caution which very prudent and thoughtful persons" would have exercised under like circumstances could have enabled the company to foresee, guard against and prevent all the different occurrences from which the injury resulted. In our opinion, it was not less careful as to the protection and safety of the plaintiff than persons of ordinary prudence would have been. It seems clear, at any rate, that it was at least as prudent in this respect as the child's own father. We do not mean to even intimate that if the latter had been negligent, his negligence would have been imputable to the child. The idea we intend to convey is, that the same facts which show ordinary diligence on the father's part are available to show a like degree of diligence on the part of the company; and we think the evidence in this case establishes that degree of diligence as to both. This being so, the company did not violate any duty it owned the plaintiff, and, consequently, should not have been held liable. As requiring it to exercise for his protection extraordinary diligence would be exacting from it a higher degree of care and prudence than the law imposes upon it, its failure to observe such diligence, if such was the fact, was not, relatively to the plaintiff, negligence at all, and could not, therefore, be the basis of a recovery in his favor.

We have given this case much thought and deliberation, and our conclusion is that, under the evidence, the verdict cannot be supported upon legal principles, and ought to be set aside.                    *Judgment reversed.*

ATKINSON, Justice, dissenting.

Aside from the facts stated in the official report, it is only necessary to refer to what in the treatment of the questions made in this cause, both by the majority and

myself, is an accepted fact; and that is, that the plaintiff, at the time of the infliction of the injuries complained of, was a child of too tender years to be chargeable with negligence on his own account. This admission obviates a discussion in justification of the finding of the jury in so far as it found that fact in his favor. Dealing with him as a person wholly irresponsible and chargeable with no measure of diligence for his own safety, we are to consider what are the relative rights of the person injured and the relative duties of the defendant company. It may be stated as fundamental, that under the provisions of the code, a railroad company in the running and operating of its trains, at all times, at all places, owes to all persons, at least, the duty of ordinary care. This is a necessary deduction from the code provision which from the proof of injury raises a presumption of negligence, and places upon the company the burden of proving ordinary care. For if the duty was not imposed by statute, the presumption could not arise. Just what amount of vigilance constitutes ordinary care is necessarily a question of fact, and cannot in the nature of things be measured by any standard which in advance can be prescribed by law; and hence such are questions to be determined by a jury. So far as this particular case is concerned, it would make no difference whether this child was a licensee or not, whether he was in the position where he was injured by permission of the company or not. Being of too tender years to be chargeable with negligence, he was wanting in capacity to become a wilful trespasser, and therefore, is to be judged by the same rules as would apply to any animate, though irrational, object injured under like circumstances. Let us suppose that instead of being a human being he had been an ordinary domestic animal, and being injured the owner had brought suit to recover, what would it have been necessary for him to prove? It would have been necessary only to prove ownership, value, injury. In order to rebut the

presumption it would have been necessary for the defendant company to show that its servants were in the exercise of ordinary care; and this has been frequently held to involve proof that its servants were on the lookout, that in that respect they were not negligent, that they did not see and could not have seen the animal injured in time to prevent the injury, and that after the danger became apparent they used all ordinary and reasonable means to prevent the catastrophe. It would be no reply to the action to say that the animal had no right to be at the point injured, for it has been held by this court that even in those districts where it is unlawful for animals to run at large the duty of the company to take precautions to prevent injury to them is not thereby lessened. So with the child injured in the present case; as to one of his mental capacity it would be no reply to say that he had no right to be where he was injured; being irresponsible, he was under no duty to look out for his own safety; and therefore the company could not avoid a recovery by showing that he was negligent, but only by showing that its servants, at the time of the injury, were in the exercise of ordinary care. In the present case, however, not only was the person injured not a trespasser, but he was in the dangerous position of walking among its tracks by permission of the railroad authorities, and was injured at a time during the day when the company must have known, from experience and observation extending over many years, that many children of his tender age were wont to be at that place, and exposed constantly to the very dangers into which, in consequence of their youth, they were likely to be allured; and yet when under these circumstances one of them is injured, and the company offers no excuse by way of evidence showing diligence upon its part, it is said that to require proof such as would be necessary to shield it if the action were for injuries to an animal, is to impose upon it the duty of extraordinary care. No diligence at all was shown upon

the part of the defendant company; and yet, in the face of the statute imposing upon it the burden of proof in such cases, it is held that no recovery could be had.   Upon the principle of the turntable cases, which are familiar to the profession, I am content to rest my individual judgment that the law of the case was with the plaintiff.   The facts the jury found with him; and upon these two propositions it is, with the greatest deference for the opinion of my learned brethren, earnestly submitted that the judgment of the trial court, approving the finding of the jury and denying a new trial, should be permitted to stand.