## SOUTHERN RAILWAY COMPANY *v.* CHATMAN.

1. Where suit was brought for a personal injury alleged to have occurred while the plaintiff was crossing the tracks of a railway at a public-street crossing in a city in South Carolina, and it was alleged that the employees of the railroad company were negligent in the manner in which they caused an engine and car to approach and pass over such crossing at an unsafe rate of speed, without keeping a proper lookout, and without giving any signal or warning of approach, it was error to so charge the jury as to leave them to infer that, under such a declaration, a recovery might be had if the injury did not occur at or near a public crossing but in a railroad switching-yard, although the plaintiff may have been a trespasser there, if the defendant's employees could have discovered his presence by the use of ordinary care; or that a recovery might be had if the plaintiff, when injured, was swinging upon a switch-engine of the defendant in its switching-yard, provided the defendant's employees could have discovered him by the use of ordinary care.

2. As a general rule, the agents of a railroad company operating one of its trains are not required to anticipate the presence of a trespasser upon its tracks or property, and the duty of using ordinary care and diligence does not arise until his presence there becomes known. This general rule applies as well to children as to grown persons.

3. In determining what ordinary care requires in reference to children, the fact of their apparent size, age, and inability to protect themselves, is proper for consideration by the jury.

4. As to a child of tender years, no presumption arises that it will appreciate danger and will act with the discretion of an adult in getting out of the way of an approaching train, and persons in charge of a railway train are not authorized to act on such a presumption.

5. The general rule, that as to a trespasser upon a railway track the duty of observing ordinary care and diligence for his protection does not devolve upon the company's agents in charge of a train until his presence upon its track becomes known to them, does not relieve the company under all circumstances from anticipating the presence of a trespasser upon its track and from taking proper precautions to prevent injury to him. Where the circumstances are such that the employees of the company in charge of one of its trains are bound, on a given occasion, to anticipate that persons may be upon the track at a certain place, they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence.

Argued December 6, 1905.—Decided February 21, 1906.

Action for damages. Before Judge Born. City court of Gwinnett county. June 10, 1905.

Willie Chatman, a minor, by his next friend, Susan Moon, brought suit against the Southern Railway Company, alleging as follows: In the city of Greenville, South Carolina, the defendant's line of track crosses, just above the depot, a public street known as Riley street. On January 1, 1904, the plaintiff, a minor ten years of age, was passing over said public crossing in the exercise of all due care, and, while upon it, was run over by a switch-engine of the defendant, and his leg was crushed. The defendant was alleged to have been negligent in the following particulars: that the engine and train of cars were negligently being run at a speed of fifteen miles per hour over said crossing; that the employees in charge of them negligently failed to keep a proper lookout ahead; that they failed to stop after the plaintiff's presence upon the crossing was discovered; and that they failed to give any signal or warning by bell, whistle, or otherwise while approaching the crossing or passing over it. There were allegations as to the extent of the injury. It appears that an amendment was filed which is not contained in the record, but which is stated in the charge of the

court to have changed the allegation that the plaintiff was run over by a switch-engine to one that he was run over by a car of the defendant attached to one of its engines. The defendant put in issue the substantial allegations of the plaintiff. The jury found for the plaintiff a thousand dollars. The defendant moved for a new trial, which was refused, and the defendant excepted.

*John J. Strickland, S. J. Winn,* and *D. K. Johnston,* for plaintiff in error. *Arnold & Arnold, W. E. Ormond, N. L. Hutchins Jr.,* and *Harvey Hill,* contra.

LUMPKIN, J. (After stating the foregoing facts.) 1. The charge of the court in this case is not free from error. The suit was based on allegations, that while the plaintiff, a boy ten years of age, was passing over the tracks of the defendant at a public-street crossing in the city of Greenville, South Carolina, and was in the exercise of due care, a car attached to an engine of the defendant ran over and injured him; that the defendant's employees were negligent in causing the engine to be run over the crossing at a speed of fifteen miles an hour, in failing to keep a proper lookout, in failing to stop after his presence upon the crossing was discovered, and in failing to give any signal or warning while approaching the crossing. On the trial the evidence on his behalf tended to support his allegations. The evidence for the defendant tended to show, that the place where the injury happened was not at or near any public crossing, but in its yard where there were a number of tracks, and where switching was done; that its employees did not know of, and had no reason to anticipate, the presence of the plaintiff at that place; and that, while they did not know just how he was injured, he admitted to the physician who attended him that he was swinging on the engine when he was hurt. There was some conflict in the evidence as to whether people did frequently cross the tracks at that point. While in the early part of the charge the court said to the jury, "If the plaintiff is entitled to recover, he must recover upon the acts of negligence alleged in this declaration and the amendment," yet, when asked to charge that if the plaintiff was not hurt at the crossing, but somewhere else in the defendant's yard, he could not recover under his petition, the court added words which were calculated to lead the jury to believe that it made no difference "whether the crossing be a legally established public crossing, or a

place where people frequently cross the tracks of the defendant." He also stated to the jury, "Now, before the plaintiff can recover at all, some duty which the company owed the plaintiff must have been violated." He then immediately charged, that if the plaintiff was a trespasser upon the tracks, and the place was one not frequented by people in crossing, but he was there of his own free will and accord, without invitation of the company, and that the company was not aware of his presence, "or could not have been, by the exercise of ordinary care," it owed him no duty except not to injure him willfully or wantonly. At another part of the charge he instructed the jury that if the plaintiff was swinging or attempting to swing on the cars or engine without the knowledge of the employees connected with the train, he would be a trespasser, and they would be charged with the duty only not to willfully and wantonly injure him, but "if his presence could by the exercise of ordinary care have been known, then the company would owe the plaintiff that degree of care which I have defined to you as being ordinary care. Now, gentlemen of the jury, these are the questions that have to be determined by you." Thus, in spite of the limitation expressed in the beginning of the charge, the judge indicated to the jury that a recovery might be had if there was a breach of duty on the part of the company toward the plaintiff, and then charged them as to the duty of the company in regard to trespassers in its switching-yard, and to a boy swinging upon its engine or cars in such yard. It thus became quite possible for the plaintiff to make one case by his declaration, and recover on an entirely different state of facts.

2-5. The injury involved in this case occurred in South Carolina, and therefore the law applicable to it is to be determined without reference to any local statute of this State. No statute of South Carolina was pleaded or shown, and we must look to general principles and decisions not dependent upon statutes in particular jurisdictions. The English decisions afford little aid, as railroads are of comparatively recent origin, and laws were early enacted in that country on the subject of trespassing upon railway tracks. 3 and 4 Vict. c. 97, §16. The general rules in regard to trespassers on railroad tracks and the liability of the company for injuries to them have given rise to no little differences of opinion and conflict of decisions. Some of this, however, appears to have resulted from

the want of a clear apprehension of the difference between general announcements of a rule and the application of it to the facts of particular cases, or from a failure to consider whether with a change of circumstances the general doctrine does not also undergo modification. Not only the courts but the text-writers exhibit a lack of harmony on the subject. Generally speaking, the rule has been stated to be that a person who owns or controls property owes no duty to a trespasser upon it except not to willfully or recklessly injure him. Thus it has been held, that an owner or occupier of land who makes an excavation not adjacent to a street or place of public passage is not bound to so guard it as to prevent injury to persons who come upon the land without invitation, express or implied; and that this is true even as to trespassing children. *Savannah, Florida & Western Ry. Co.* v. *Beavers*, 113 *Ga.* 398. This was a case of a trespasser, pure and simple, between whom and the owner of the property no relation of duty existed, and is an illustration of the statement of the general rule. It has been said that a similar rule applies to railway tracks. Baldwin's Am. Ry. Law, 233; 2 Wood on Railroads (Minor's ed. 1894), §320. In the latter authority it is said: "A railway company owes no duty to a trespasser upon its track or premises, other than that which every person owes to another, and that is to refrain from inflicting upon him a willful or malicious injury." Nevertheless in the same section it is said: "But if a person can be easily seen lying upon the track, in season to stop the train, the company is not warranted in running him down simply because he has no business there, but is bound to use due care to stop the train, and prevent the injury if possible. The duty of the company in such cases exists when the trespasser is first discovered and the engineer becomes aware that he is ignorant of the approaching danger; and if after becoming aware of the trespasser's presence the engineer fails to exert every effort possible to prevent the injury, the company must be held liable. So also in cases where persons have long been accustomed to use the track of the company for a passage-way at certain localities, the company is charged with notice of such usage and is under obligation to keep a careful lookout at such places, even though the parties thus using the track do so without authority and are really trespassers." And again: "The same rule prevails as to persons trespassing upon railway bridges and other parts of the road where they have no right

to be, and where the company has no reason to expect that persons will go." It will thus be seen that, after the broad language used in setting out the general rule, cases are stated where a duty arises to use care, and a corresponding liability arises from a failure to do so. In 3 Elliott on Railroads, 1257, it is said: "What we have already said concerning the limited duty to trespassers applies to trespassers upon a railroad track. It is generally, and, we think, correctly held that a railroad company is not bound to keep a lookout for trespassers upon the track. But some authorities hold that it must keep a lookout for trespassers as well as others. And in some jurisdictions the rule is modified so far as to require the company to keep a lookout in cities and other places where trespassers or licensees may reasonably be expected. . . Although there is a clear distinction between negligence and willfulness, yet a reckless and wanton disregard of consequences, evincing a willingness to inflict injury, may amount to willfulness, although there is no direct proof of actual intention to inflict the injury complained of." In 2 Beach on the Law of Railways, 970, it is said: "The railway's employees must use reasonable efforts to prevent injury to persons seen crossing or walking upon the track, whether they be using the track under the company's license or acquiescence, or whether they be trespassers." In 2 Shearman and Redfield on Negligence (5th ed.), §483, after referring to the rule that a plaintiff may recover, notwithstanding his contributory negligence, if the defendant, after becoming chargeable with notice of the plaintiff's danger, failed to use ordinary care to avoid injury to him, it is said: "It is universally agreed that this rule applies to all cases in which the defendant or his agent is actually aware of the plaintiff's danger. Thus, a locomotive engineer or motorman, after becoming aware of the presence of any person on or dangerously near the track, however imprudently or wrongfully, is bound to use as much care to avoid injury to him as he ought to use in favor of one lawfully and properly upon the track, that is to say, ordinary care with respect to anticipating injury, before it becomes imminent, and the utmost care and diligence of which he is personally capable, after he knows that it is imminent." In section 484 it is said: "The rule stated in the last section, however, does not cover the whole ground. The defendant is responsible, not only for what he actually knows, but for that which he is bound to know. It is clear that the frequent

statements that contributory negligence is an absolute bar to re-covery, except where the defendant's conduct has been 'reckless,' 'wilful' or 'wanton,' or even grossly negligent, are not sound. No courts have in actual practice adhered to this imaginary rule; it has been explicitly overruled, and, indeed, it has been explained away or disavowed by courts which had previously stated it. Nothing more is really meant by the courts using these phrases than a want of ordinary care, after becoming actually aware of the plaintiff's peril."

Judge Thompson, after stating that recent judicial decisions have for the most part been converging towards certain lines of argu-ment, bringing their conclusions into harmony with the theories on which nearly all of them proceed when dealing with the subject of the care required by the owners or occupiers of real property to-wards persons going thereon, and stating the general rule on that subject, says: "but such persons take the premises as they find them, and must look out for their own safety, subject, however, to the rule that the owner or occupier will not be held blameless if he injures them through negligence after discovering them in an ex-posed position on his premises, or if he inflicts upon them while there a wanton or malicious injury." 2 Thomp. Neg. §1705. In §1713 it is said: "This doctrine is that where a trespasser or bare licensee exposes himself to the risk of being run over upon a railway track or in a railway yard, and is killed or injured, there can be no recovery against the railway company unless it is made to appear that the accident was the result of willful misconduct, or of negli-gence or recklessness so gross as to amount, in theory of law, to willful misconduct." But he held the opinion that "where the pub-lic for years have been accustomed to cross the track of a railway company upon a well-defined path, with the acquiescence of the company, although without its express license, a license to do so will be presumed, and persons so crossing to and fro are not, in a strict sense, trespassers, but are licensees, and the company is bound to take reasonable precautions to avoid injuring them." §1725. Some courts, including the Supreme Court of this State, have held that mere walking on a railroad track, though continued for a considerable time and known to the company, does not create a license, but enters into the circumstances and situation to be con-sidered by the jury in determining whether the railroad company

exercised due care. Section 1726 of the work just above referred to reads as follows: "It is a sound and wholesome rule of law, humane and conservative of human life, that, without regard to the question whether the person killed or injured in the particular case was or was not a trespasser or a bare licensee upon the track of the railway company, the company is bound to exercise special care and watchfulness at any point upon its track where people may be expected upon the track in considerable numbers, as, for example, in a city where the population is dense; even between streets where the track has been extensively used for a long time by pedestrians; or where the road-bed is constantly used by pedestrians; or at a bridge in a thickly settled community which the public, in considerable numbers, have used for many years. At such places the railway company is bound to anticipate the presence of persons on the track, to keep a reasonable lookout for them, to give warning signals, such as will apprise them of the danger of an approaching train, to moderate the speed of its train so as to enable them to escape injury; and a failure of duty in this respect will make the railway company liable to any person thereby injured, subject, of course, to the qualification that his contributory negligence may bar a recovery."

In 23 Am. & Eng. Enc. Law (2d ed.), after stating (p. 735) the general proposition that the obligation of a railroad company to trespassers is to abstain from wantonly and wilfully injuring them, the text proceeds (pp. 746, 747) as follows: "Though a railroad company is the absolute owner of its track, and has the right to its full and unmolested use, it is nevertheless liable for injury resulting from the ordinary movements of its trains to a person on or near its track, though a trespasser, where the injury is wilfully or wantonly inflicted; and the rule is often stated that a railroad owes no duty to one wrongfully on its tracks, except to refrain from wantonness or wilfulness, or such gross negligence as amounts to wantonness. . . This latter proposition as interpreted by the majority of the decisions, however, is but equivalent to saying that a railroad is not required to anticipate the presence of a trespasser on or near its tracks, and is under no duty to exercise care and diligence until his presence and peril are discovered. The duty of exercising reasonable care to avoid injuring a trespasser does not necessarily arise at the moment he is seen by the railroad's employees, but at the mo-

ment the peril of his position becomes known, or at least should become known by the exercise of reasonable care after the discovery of the person's presence on the track." As to places where the tracks run through cities or other populous districts where persons are in the habit of crossing or walking on the tracks, see page 754. In South Carolina it has been held that "A railroad company owes no duty to a trespasser on its tracks,.except not to do him any wanton or reckless injury." Smalley *v.* Southern Ry. Co., 57 S. C. 243; Hale *v.* Columbia R. Co., 34 S. C. 292. It is recognized however, that there is a modification of the rule in cases of persons on a railroad track who from age or misfortune can not take care of themselves, and in cases of little children. Mason *v.* Southern Ry. Co., 58 S. C. 70.

From an examination of the text-writers referred to above, and the many cases cited by them, it will be seen that there is not perfect accord; and indeed that the expressions used by the same writer at different times do not always seem to be in perfect consonance.

.In our own State the rule as to trespassers has not always been expressed in similar language. Thus in *Western & Atlantic R. Co. v. Bailey,* 105 *Ga.* 100, it is said: "It may be also stated as a general rule, that the company owes no duty to a trespasser upon its track, except to do him no wilful or wanton injury." See also *Grady* v. *Georgia R. Co.,* 112 *Ga.* 668 (where a person was passing between two cars in a railroad yard) ; *Kendrick* v. *Seaboard Air-Line Ry.,* 121 *Ga.* 775. In the last-mentioned case the rule is stated to be that "a railroad company owes to a trespasser walking on its tracks the duty not to hurt him wilfully or negligently after his presence becomes known to its servants in charge of one of its trains." In the opinion it is said: "But when the company was charged with knowledge of the presence of a trespasser on its track, it immediately owed the trespasser the duty of exercising ordinary care and diligence to prevent any injury to him." Reference is also made to the Civil Code, §2321. And see on this subject *Western & Atlantic R.* v. *Meigs,* 74 *Ga.* 857, infra; *Central R.* v. *Brinson,* 70 *Ga.* 245-6, 253, 254; *Central R. Co.* v. *Denson,* 84 *Ga.* 774. In *Holmes* v. *Central R. Co.,* 37 *Ga.* 593, the expression used was, "all reasonable care and diligence," and it was held that a request to charge that the plaintiff could not recover unless the defendant was guilty of gross negligence was properly refused. That case in-

volved the killing of a slave at a point seventy or eighty yards from a public crossing, but on a part of the track much used by foot pas-sengers to make a short cut from one public road to another, which was known to the defendant's agents. In *Atlanta & Charlotte Air-Line Ry. Co.* v. *Gravitt,* 93 *Ga.* 370, it is said: "The duty to ob-serve all ordinary and reasonable care and diligence towards such person arises when his presence becomes known to the engineer, and not before." In *Hambright* v. *Western & Atlantic R. Co.,* 112 *Ga.* 36, it is said: "As to a trespasser walking upon the track of a railroad, the duty of observing ordinary care and diligence for his protection does not devolve upon the company's servants in charge of a train until his presence upon the track becomes known to them." See also *Hall* v. *Western & Atlantic R. Co.,* 123 *Ga.* 213. In *Nashville Ry. Co.* v. *Priest,* 117 *Ga.* 767, it was held, that, the plaintiff being a trespasser upon the premises of the defendant, it owed her no duty of protection until her presence was discovered, although she was a child of tender years.; and it was said that after she was seen by the defendant's employees it did not affirmatively appear, from the declaration, that the conduct of any of them "was so grossly negligent as to indicate a wilful and wanton disre-gard for her safety." This was said of a child who climbed on a railroad car, and jumped down when told to get off by an employee, on the approach of an engine. In *Ashworth* v. *Southern Ry. Co.,* 116 *Ga.* 635, the expression "wantonly or wilfully" is again used in the preliminary statement of the general rule, but it is clearly shown that such a rule "does not relieve the company, under all circumstances, from anticipating the presence of a trespasser upon its property and from taking proper precautions to prevent injury to him." In *Bullard* v. *Southern Ry. Co.,* 116 *Ga.* 644, it is said: "Where a number of persons habitually, with the knowledge and without the disapproval of a railroad company, use a private pas-sageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of this custom, are bound, on a given oc-casion, to anticipate that persons may be upon the track at this point; and they are under a duty to take such precautions to pre-vent injury to such persons as would meet the requirements of ordi-nary care and diligence." In *Crawford* v. *Southern Ry. Co.,* 106 *Ga.* 870, the subject of the duty to use ordinary care as to a tres-

passing child at a place where her presence should have been antici-pated is discussed fully; and section 2321 of the Civil Code is also cited. Under the decision in *Nashville Ry. Co.* v. *Priest,* supra, this court is committed to the doctrine that unless there be some-thing to put the company on notice, or to cause it to anticipate the presence of a childish trespasser, it is no more required to keep a lookout for the presence of such a trespasser than for a grown person, though this view is not universally adopted. See 23 Am. & Eng. Enc. Law (2d ed.), 747; 2 Thomp. Neg. §§1808, et seq.

It is impracticable in the course of an opinion to undertake to harmonize or discuss at length the different views or the language employed in expressing them. A few suggestions, however, may be made. Negligence has been defined in various terms. One very comprehensive definition is to be found in Black's Law Dict., as follows: "Negligence: The omission to do something which a rea-sonable man, guided by those considerations which ordinarily regu-late the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do. It must be determined in all cases by reference to the situation and knowledge of the parties and all the attendant circumstances." The Nitroglyc-erine case, 15 Wall. 536; Blythe v. Birmingham Waterworks, 11 Exch. 784. Another definition is that "Negligence is the uninten-tional failure to perform a duty implied by law, whereby damage naturally and proximately results to another." 21 Am. & Eng. Enc. L. (2d ed.) 457. In the notes various other definitions are given. An owner of property is not ordinarily required to antici-pate that trespassers will come upon it, and to prepare his property for them, or guard against possible injury to them. Hence arises the general statement of the rule as to liability only for wanton, wilful, or reckless injury, looking at the trespasser as such solely, and without reference to the existence of any relation creating a duty. The duty not to wilfully or recklessly injure another may be said to be due from all men to all men. So with reference to a railroad, not at public crossings, stations, or other places where people have a right to go, and in the absence of invitation or li-cense, express or implied. But when a trespasser on a railroad track is seen by the agents running a train to be in a position of peril, the duty of exercising ordinary care exists. The duty to exer-cise such care where they are bound to anticipate the presence of

people on the track will be mentioned later. Hon. John L. Hopkins, in his work on the Law of Personal Injuries, §87, p. 138, says: "The agents of the company may presume that no one will become an active wrong-doer, and violate the right of the company by trespassing on the track, and they may act on that presumption. They must exercise ordinary care with reference to the condition contemplated by law, a condition which consists of the performance of legal duties, and the observance of legal rights, by all persons. This condition may be styled normal, and it continues until the agents of the company know, or have reason to suppose, that a human being may be on the track at a particular place. When that occurs a new condition is made up, and from it spring new duties. . . If it be simply a trespass, with nothing of legal significance connected with and preceding it, the relation of the company to the trespasser begins when he is discovered. Prior to that time, as there is no duty of anticipating his wrongful act, there is no reason for precautionary measures. When he is discovered, the condition with which the company has to deal is made up, and an ever-present rule of law requires that ordinary care appropriate to that condition shall be used. As a general rule it is an exercise of ordinary care to presume that the trespasser is in full possession of his senses, that he will appreciate his danger, and that he will act with discretion and get out of the way. On this presumption the engineer may act until he discovers that the trespasser is not likely to escape the peril. When that occurs, the condition changes to one of increased danger, and ordinary care as to it requires increased action to avoid the calamity. If the trespasser was known by the engineer to be deaf, or the engineer could see that he was drunk, or disabled or helpless, or that he was on a high trestle or in other position from which he could not extricate himself, the presumption would not arise, and increased care should be exercised accordingly." Ib. 140. "Railroad engineers should observe more caution in running at places where they know persons are likely to be on the track than elsewhere, even if those persons are trespassers, and especially is this true when the company has at least tacitly consented to this otherwise unauthorized use of its property by the public." *Western & Atlantic Railroad* v. *Meigs*, 74 *Ga.* 857, 865. After a child of tender years is discovered upon the track, no presumption that it will use discretion like a grown person arises, but

it is to be considered rather like a person known to be helpless or disabled; or at least its size and apparent age are to be considered in determining what ordinary care requires of the engineer. "Due care on the part of a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation." Hopk. Pers. Inj. §87.

From the foregoing discussion it will be seen that the charge of the court was erroneous in several particulars. It treated a switching-yard at a distance from a street crossing as being practically the same as such crossing, if people frequently passed over the tracks there. It placed upon the company the duty of using ordinary care to discover a trespasser upon its tracks, even if it were at a place not frequented by people in crossing, and with nothing to cause it to anticipate the presence of any person there; and of using ordinary care to know whether the plaintiff was swinging on its engine or cars in its switching-yard. There were other exceptions, for want of sufficient fullness in certain charges; but it does not appear that requests were made of the court to charge more fully on those subjects. It is unnecessary to discuss the statutes of this State, as the injury occurred in another State.

*Judgment reversed. All Justices concur, except Atkinson, J., who did not preside.*