FOWLER *v.* GEORGIA RAILROAD & BANKING CO. *et al.*

In a suit for a personal injury the evidence for the plaintiff showed as follows: The plaintiff, with full knowledge of the facts and of the dangerous character of the place, left a public street at night, went into a railroad yard where there were many tracks and where trains were constantly being made up and cars being shifted, walked along a space between tracks for a hundred and fifty or two hundred feet, and there sought to cross a track in order to reach a place where a public street abutted against the yard at a different level from the latter and with a fence across the end of it. In approaching the track he saw the end of a car a few feet from him, but could not tell certainly whether it was in motion or still, and while crossing he was run over by it and hurt. No knowledge of the plaintiff's presence at the scene of the injury was shown, on the part of the company's servants, but there was evidence tending to show use by the public, for a long time, of a driveway upon the edge of the yard, which had, a year or two before the injury, been destroyed, graded, and covered with tracks, and that a number of other persons at times passed from the street which abutted on the yard to the level of the latter and thence to a public crossing, or vice versa. *Held:*

1. That there was no error in granting a nonsuit.
2. The rejection from evidence of an answer of the municipal authorities of the city where the scene of the injury was located, filed in an equitable case between it and the railroad company, involving the question whether the municipality had rights in regard to the driveway, and whether the crossing near by was a public crossing, if error at all, was not such as to require a reversal under the evidence.

Argued June 10,—Decided December 24, 1909.

Action for damages. Before Judge Ellis. Fulton superior court. September 30, 1908.

Fowler sued for damages on account of a personal injury. He was working at a place in Atlanta where a street was being made to pass under the railroad, and had been so engaged for two days. In January, 1907, he went to his work by passing through a cemetery which lay alongside of the railroad, from the gate opening upon

the railroad tracks, where it was claimed that a public crossing existed, and thence down a street parallel with the railroad. In the evening, about half past six o'clock, he was returning by the same way.  On arriving at the cemetery gate it was closed.  He then left the crossing and turned up the railroad, and walked between the tracks, where, he said, "it looked like right smart walking had been done."  He also referred to it as a footpath.  At some distance from the crossing, estimated at from fifty yards to two hundred feet, another street ran down at about right angles to the railroad and stopped.  A fence had been built across its mouth by the railroad company, but not across the sidewalk.  After the injury a better fence was erected.  The railroad tracks were about a foot and a half lower than the end of the street which abutted against them, and there was a concrete wall across the end of the street.  He stated that he did not know whether the wall came across the sidewalk or not.  There was evidence tending to show that for many years there had been a way used by the public, extending from the end of this street behind a coal-chute of the company, along the side of the cemetery to the gate, and by it people had gone from this street to the cemetery crossing, but that about two years before the injury the company had taken down its coal-chute, graded down this way, and occupied it as a part of its yard, laying tracks there.  The evidence did not show that the plaintiff went along the way thus formerly open, or was on it when hurt. At the end of the fence on one side of the street was a stone used as a step by which the sidewalk could be reached from the lower level of the railroad yard.  One witness testified that there was a dirt step or two there, which looked like they had been dug by children, and were not regularly constructed steps.  When the plaintiff found the cemetery gate closed, he did not go along the wall next to the cemetery, but turned back and crossed one of the tracks in the yard and went up along the space between two tracks. He testified that if he had stayed next to the wall he would not have had to cross any track at all, but that he went back and walked between two sets of tracks where he thought it was fixed for a walk. He testified: "It was not smooth all through the yard like it had been fixed for people to go from Decatur street into the cemetery. . . That set of tracks through there had this ground-up rock or sand, or something of the kind, that was whiter than the cinders

that was about on it; it was between the sets of tracks, not between the tracks." He took this route because it was shorter than to go to where there were regular street crossings. When he reached a point in the railroad yard nearly opposite the further side of the street which abutted there, he turned towards it for the purpose of crossing the intervening track. He looked to see if anything was coming. He heard noises in the yard, but not on that track. He saw a car on the track which he was about to cross, at a distance of six or eight feet from him. He could not see whether other cars were attached to it or not. On his cross-examination he was pressed to state whether this car was moving or standing still, but did not state positively. His answers to questions on this subject included the following statements. "The car was standing still when I started up; if it was moving I couldn't tell you. . . Yes, sir, I stopped and looked both ways. . . I told you if it was moving I couldn't see it. . . I said if it was moving I couldn't tell it. . . I say if it was moving I couldn't tell." In answer to the question, "Well, was it standing still,—are you willing to go on record as to whether it was standing still or moving?" he answered, "That is all I can say, then." He started across the track, took one or two steps, not looking at the car, but looking where he was going, and just as he stepped upon the track the car struck him and injured him. He was familiar with the locality, having gone through there several times. He knew that he was in the railroad yard, and that they were switching above and below him in it. "It was tolerably dark." The place where the injury occurred was in the switch-yard of the railroad company, where there were a number of interlacing tracks; the plaintiff estimated that there were from ten to fourteen tracks. A witness for him testified that there was switching going on in the yard all the time, at least in the daytime and up to six o'clock in the evening, when he left his work near by. A photograph was introduced, showing the end of the street which abutted on the railroad yard, the wall which had been built across it, and the fence above the wall; also a small stone lying at the end of the wall, which the plaintiff had referred to as a step. Other evidence was introduced to show that prior to the injury a number of people who worked in that vicinity, and had occasion to do so, would go across the cemetery crossing and through the cemetery, or would go down the street

which abutted against the yard and turn down the driveway to the cemetery gate, before the wall was built and the driveway destroyed, and thence across the cemetery crossing, and after the wall was built they would still step down at the end of it and turn towards the cemetery gate; that, after the railroad company built the fence, children would crawl between the planks, and that grown people would go around the end of the fence and step down, until the railroad company built a high wall or fence and stopped it.

At the close of the evidence for the plaintiff the court granted a nonsuit, and he excepted. Error was also assigned on the rejection from evidence of the answer of the City of Atlanta to an equitable petition filed by the railroad company, in which was involved the question whether the cemetery crossing was a public crossing, and whether the city had rights in regard to the driveway which had existed and was claimed to have been used for a considerable time, extending from the cemetery gate along the cemetery wall to the street which terminated at the railroad yard.

*Burton Smith*, for plaintiff.

*McDaniel, Alston & Black*, for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

The plaintiff was injured in the switch-yard of the defendant company, where there were many interlacing tracks, and where switching was constantly going on. This was known to him. Nevertheless he left the regular street crossing, or what was claimed to be such, when he went to the cemetery gate, and to save an extra walk, because the gate was closed, went up among the tracks, in the dark, in order to cross over to another street which ended at the yard. After he had proceeded forty or fifty yards, he undertook to cross a track which was between him and this street. He saw the end of a car not more than six or eight feet from him, but he could not state positively whether it was standing still or in motion. He could only say in his testimony that if it was moving he could not tell it. Nevertheless he took the chance, ceased to look at the car, started across the track, and was hurt by the car, which must have been already in motion, or have been put in motion and run some feet while he took a step or two,—most likely the former. There was no evidence to indicate that the agents or servants of the company knew of his presence, or had given him any license to be there. Even in an age when hurry and speed are such prominent

factors in daily life, to go at night knowingly, and merely to save a little extra walk, into a railroad yard full of tracks, and palpably full of danger, where switching is in constant progress, and to attempt to cross a track within a few feet of the end of a car, without even being sure whether it is standing still or in motion, is so plainly gross negligence, without which no injury would have happened, that no recovery could be allowed, and nothing but a nonsuit could result. This unfortunate plaintiff may be a subject of sympathy, but he is entitled to no damages from the railroad company.

It was sought to make the company liable on the ground that its agents should have anticipated the presence of persons at that place, and have used ordinary care to have discovered them. If so, this duty must have arisen either because of the driveway which formerly existed along the wall of the cemetery, or because the circumstances put them on notice of the probable presence of a trespasser. As to the first suggestion, it is enough to say that the driveway existed no longer. It had been destroyed some two years before, and the plaintiff knew the condition there. When he entered this yard, relatively to his own diligence he took the situation as it was. It was not a question as to whether the company had a right, probably two years previously, to destroy the driveway, cover it with tracks, and make it a regular part of the yard, or whether any right of passage over it had been acquired by the public. Moreover, it did not appear at all certain that the plaintiff was in the space formerly used as a driveway when he was hurt. He went back further toward the center of the yard, and walked up between two tracks. As to the other ground, some of the decisions of this court have indicated the existence of a difference as to whether any duty arises, from known frequency of use by trespassers, to look out for them in a switch-yard, where there are many tracks and constant shifting, drilling, and changing of cars, and on a main line of travel, where trains move in the accustomed duties of transporting persons and things from one place to another. *Rome R. Co.* v. *Tolbert,* 85 *Ga.* 447 (11 S. E. 849) ; *Central R. Co.* v. *Rylee,* 87 *Ga.* 496 (13 S. E. 584, 13 L. R. A. 634) ; *Grady* v. *Georgia R. Co.,* 112 *Ga.* 668 (37 S. E. 861) ; *Curtis* v. *Southern Ry. Co.,* 130 *Ga.* 675 (61 S. E. 539). See also 3 Elliott on Railroads, § 1258. Of course this does not mean that every switch or siding, at a station or in the country,

along a main line of. travel, will ipso facto turn the place into a switch-yard within the meaning of these authorities. Whether the difference suggested is qualitative as to the kind of diligence required, or quantitative, so that the general rule relieving from liability as to trespassers on a main line, whose presence is unknown, becomes merely intensified in a "switch-yard," because of its particular character and use, certain it is that railroad companies must have some place to shift their cars and make up their trains, if they are to operate at all. If against their will, and in spite of walls and fences, trespassers can force their way into the "switch-yard" of a railroad company, and require it to change the whole system of making up trains and shifting cars, not because its employees know of a trespasser's presence in a place of danger, but because they ought to anticipate that he might be there and that walls and fences could not keep him out, the making up of trains and getting them ready for departure would be greatly hampered and the liability of the company for injuries to trespassers extended to unreasonable lengths. The evidence on the subject of the rock or so-called "step" beside the right of way, and as to people getting up by means of it from the level of the railroad yard, or clambering through the fence, did not suffice to authorize any recovery by this plaintiff under the facts of the case.

The answer of the City of Atlanta in another litigation between it and the railroad company would not have saved the plaintiff from a nonsuit had it been admitted in evidence. At most it could only have shown notice to the company of a claim that the crossing at the cemetery gate was a public crossing, that the public had been accustomed to use the driveway alongside of the cemetery before it was cut down and destroyed by the company, and that many people used it, and a contention that the public had acquired rights in it. It could not have given this plaintiff any right to recover, under the evidence introduced by him. *Western & Atlantic R. Co.* v. *Bloomingdale,* 74 *Ga.* 604, 610, 611.

*Judgment affirmed.   All the Justices concur, except Holden, J., disqualified.*