### HAYWOOD v. ATLANTIC COAST LINE R. CO.

(District Court, S. D. Georgia, E. D. April 17, 1919.)

RAILROADS ⬤─369(4)—MOVING TRAINS IN YARDS—DUTY TO TRESPASSER OR LICENSEE—ANTICIPATING PRESENCE.

Railroad employés in charge of switching operations must exercise ordinary care to anticipate the presence of, and avoid injury to a boy of tender years, where they have sanctioned his practice of passing through the yard at a particular hour to serve the company's employés.

⬤─For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by Clifford Haywood, by his father and next friend, James Haywood, against the Atlantic Coast Line Railroad Company. On demurrer to petition. Overruled.

Oliver & Oliver and S. R. Dighton, all of Savannah, Ga., for plaintiff.

Osborne, Lawrence & Abrahams, of Savannah, Ga., for defendant.

BEVERLY D. EVANS, District Judge. According to the allegations of the petition, the plaintiff was a small boy, 12 years of age, who for 3 years prior to his injury had been engaged in carrying dinners to employés of the railroad company, at work in its switching yard. These employés were allowed one hour for dinner, and it was the custom of the railroad company, pursued and acquiesced in for many years, to permit small boys to carry dinners to its employés while working in the yard of the company, and every day numbers of small boys came into the yard of the defendant company and carried dinners to its employés. The plaintiff's custom was to carry the dinners to an office inside the yard, which office was occupied by the trainmaster and other employés, and leave them there for such employés as would call for them. Other dinners which he carried for employés working at Southover he was accustomed to put on a shuttle train which carried the dinners to Southover and brought back the receptacles. For employés working in the yard and on the wharves he would carry the dinners into the yard and through the yard to the wharves. At the end of the dinner hour he would return through the yard, get the buckets from the employés in the yard, also the buckets left in the office, and also the buckets returned by the shuttle train. This practice and custom was well known, not only to the employés of the company for whom plaintiff carried dinners, but was also known to the officers of the railroad company in the office in the yard used by the trainmaster and other employés, was known to the yard foreman having in charge the switching and operation of the trains in the yard, and was known to the engineers in charge of the engines doing the actual switching in the yard, and to the switchmen working in the yard. The company's employés had permitted him to pursue this custom and practice without objection, and had permitted him to return through the yard to get the buckets.

About 1 o'clock in the daytime, as plaintiff was returning through the yard to get the buckets, and when he was crossing one of the tracks, three box cars which negligently and in violation of law had been kicked down upon this track moved suddenly upon him, striking him before he knew of their proximity, knocking him to the ground, and inflicting injury upon his person. The company was negligent in failing to exercise ordinary and reasonable care under the circumstances, and especially negligent in kicking the cars upon the track which plaintiff was crossing, in failing to have a lookout, and in failing to give warning of the approach of the cars prior to the kicking.

As a general rule a railroad company has the right to shift and move freight cars at its pleasure upon the tracks in its yard, and under ordinary circumstances it would be under no obligation to keep a watch upon the movement of these cars for the purpose of preventing an injury to a person not an employé, or not in the yard by permission, who might casually happen to be upon one of the tracks when a car is set in motion. S., F. & W. Ry. Co. v. Waller, 97 Ga. 164, 25 S. E. 823, 34 L. R. A. 459; Rome Railroad Co. v. Tolbert, 85 Ga. 447, 11 S. E. 849; Central Railroad Co. v. Rylee, 87 Ga. 491, 13 S. E. 584, 13 L. R. A. 634. But this rule does not exclude a recovery for an injury sustained under the circumstances alleged in the petition. The differentiating fact is that the railroad company's employés in charge of the yard and its switching operations, from a long-established custom, had sanctioned the practice of allowing this boy of tender years, at a particular hour of the day, to pass through the yard on a mission of service to its employés, and they were under a duty to exercise that degree of vigilance which would amount to ordinary care to anticipate his presence in the yard. It is for the jury to say whether, under the allegations of the petition, the railroad company's employés, in the exercise of ordinary care, had cause to anticipate the plaintiff's presence in the yard at the time of the injury, and whether, if ordinary care had been exercised, the injury to him would not have occurred.

The general rule that as to a trespasser or licensee upon a railroad track the duty of observing ordinary care for his protection does not devolve upon the company's agents in charge of a train until his presence becomes known to them does not relieve the company under all circumstances from anticipating the presence of a trespasser or licensee upon its track, and from taking proper precautions to prevent injury to him. Southern Ry. Co. v. Chatman, 124 Ga. 1026, 53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675. The foundation of the rule that a railroad company is not liable to a trespasser injured in the ordinary movement of its trains, unless the injury is caused by the willful or wanton acts of its servants in charge of the train, is that the railroad's agents are not under duty to anticipate the presence of the trespasser. But where the circumstances are such as to raise a duty to anticipate the presence of a trespasser or licensee, then the railroad's agents must exercise ordinary care in the discharge of that duty.

This principle, as applied to the allegations of the petition, constrains me to overrule the demurrer.