James Lee CLARK

v.

ATLANTIC COAST LINE RAILROAD COMPANY.

No. 18676.

United States Court of Appeals
Fifth Circuit.

March 30, 1961.

Rehearing Denied May 11, 1961.

Robert L. Cork, Valdosta, Ga., for appellant.

T. H. Vann, Roy M. Lilly, Thomasville, Ga., S. Spencer Bennet, Quitman, Ga., for appellee.

Before TUTTLE, Chief Judge, and JONES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

On the afternoon of April 29, 1955, on the outskirts of Quitman, Georgia, James Lee Clark, twenty-two months old, was sitting in the middle of the railroad track on Atlantic Coast Line's main line. His parents were nearby digging for fishing worms in a ditch paralleling the tracks. The weather was clear. The sun was shining. A long freight train—three diesel units and eighty-eight cars—arrived in Quitman at about three o'clock in the afternoon, traveling at an estimated speed of thirty-five miles an hour. When the train was about a thousand feet away from the child, the engineer saw him rise from a sitting position and start walking down the track. Although the engineer immediately put the automatic brakes in emergency position, the lead diesel struck the child, knocking him down. When the train came to a stop, the child was under the thirteenth car. Miraculously, he was alive. James was taken to the hospital where his injuries were diagnosed as a fracture of the skull, lacerations, and bruises. After seven days in the hospital, he was discharged with a prognosis of no permanent disability. In an action by the child, through his father as guardian, against Atlantic Coast Line Railroad Company, the district judge directed a verdict for the defendant.

The question before us is whether there was sufficient evidence of negligence on the part of the train crew for the trial court to have allowed the case to go to the jury.

The appellant contends that when James was struck by the train he was standing near a well-beaten path across the track, and that he managed to get onto the track by means of a railroad tie used for crossing from a public road to the railroad right of way. The evidence shows that at the place of the accident, there is no public crossing, no private crossing established by law, and no private crossing the railroad helped to keep up. There were several footpaths in the general area, but only one of these, the main path, was known to the engineer. He had never seen persons in that vicinity cross the track on any other path. The record shows no evidence that other members of the train crew had knowledge of any path. The engineer was looking directly ahead of the train for some time before he saw the child. When he first saw the child, James was 150 to 170 feet away from the main path. The train overtook the child when he was about 90 feet from the main path. The engineer's testimony was based on his experience in traveling this run off and on for forty-one years. At the time of the trial the engineer was retired and no longer employed by the Atlantic Coast Line.

■■ On these facts there was no jury issue on the essential point of the train crew's knowledge of the public use of a private crossing. Under the controlling case of Atlantic Coast Line Railroad Company v. Futch, 5 Cir., 1958, 263 F.2d 701, such knowledge must be shown to exist before the duty to anticipate the peril arises. See also Bridges v. Southern Railway Company, 1957, 96 Ga. App. 497, 100 S.E.2d 619; Southern Railway Company v. Chatman, 1906, 124 Ga. 1026, 53 S.E. 692, 6 L.R.A.,N.S., 283.

The engineer's testimony that he immediately put the brakes on emergency position after seeing the child is corroborated by the brakeman. The brakeman shouted a warning as soon as he saw the child in peril, but the brakes were already in emergency position. The brakes were tested in Waycross before the train departed and were found to be in good condition. They operated satisfactorily between Waycross and Quitman. The engineer testified that the train made a remarkably good stop; that nothing more could have been done to stop the train in time to avoid the accident. The child's father and another witness testified that the train did not slacken speed until it was about a hundred feet from James. Their testimony, however, does not necessarily contradict the testimony for the defendant. Train wheels are not locked when brakes are put into emergency. The brakes are

automatically set to apply the maximum tension on the brake drums needed to bring the train to the quickest possible stop. A train will not noticeably appear to decelerate, therefore, until some moments after the brakes are put in emergency.

The evidence shows that, once the child was discovered, the engineer and other members of the train crew did all that was reasonably necessary for them to do in order to attempt to avoid the accident. Atlantic Coast Line Railroad Company v. Futch, 5 Cir., 1958, 263 F.2d 701; Brabham v. Atlantic Coast Line Railroad Company, 5 Cir., 1959, 271 F.2d 267.

The judgment is affirmed.